# THE BELMONT DAIRY COMPANY AND EDWARD C. THOMAS

### *vs.*

## B. ALBERT THRASHER.

*Promissory notes: corporations; personal signature of officer; when liability is personal; evidence. Negotiable Instruments Act.*

Under the Negotiable Instruments Act (Code, Art. 13, sec. 39), the mere addition of words describing the maker as *agent,* or as filling a representative character, without disclosing his principal, deos not exempt him from personal liability.

pp. 325-326

An officer of a corporation, who, after the name of the corporation written or stamped, as the maker of a note, signs his own name, without any qualification, or description, or the addition of his official title, is *prima facie* personally responsible on the note. p. 326

In an action by a payee on such a note, the use of the form "we promise to pay," suggests the intention that he was personally bound. p. 324

If an officer of the corporation signs his own name after the corporation's name to a promissory note, merely to complete the signature of the corporation, and not with the intention of making himself personally liable, for such a defense to prevail,

in an action against him on the note, it must appear, and the jury must find from the evidence, that such was the understanding between the parties at or before the note was issued.

pp. 327, 329

*Decided December 2nd, 1914.*

Appeal from the Circuit Court for Montgomery County. (PETER and WORTHINGTON, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*R. E. L. Smith,* for the appellants.

*Albert S. Brown,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellee sued the Belmont Dairy Company and Edward C. Thomas on the following promissory note:

"WASHINGTON, D. C., Nov. 18, 1912.          $394.30.
    "Three months after date we promise to pay to the order of B. A. Thrasher, three hundred ninety-four and 30/100 dollars, for value received with interest from date at rate of 6 per cent. per annum until paid.
    "Negotiable and payable at United States Trust Company, Fourteenth and U Streets, N. W.
                              "BELMONT DAIRY CO., INC.
                                  "E. C. THOMAS."

The Belmont Dairy Company was adjudicated a bankrupt and the case against it having been *non prossed,* the suit proceeded against Edward C. Thomas alone.  There was a ver-

dict against him for $426.29, and this appeal was taken from the judgment rendered thereon. He filed the general issue pleas of never promised and never indebted, and a third plea, which on motion of the plaintiff was stricken out. In addition to the ruling on that motion the appellant complains of the action of the Court in excluding certain testimony offered by him and in granting the plaintiff's second and third prayers, rejecting the deefndant's first prayer and amending his second.

The theory of the defense is that the defendant who was president of the Dairy Company signed his name on the note to authenticate the signature of the corporation and did not sign it with the intent to make himself a party to the note or to make himself liable thereon.

The testimony shows that the Dairy Company was indebted to the plaintiff in the sum of $394.30 for cream furnished it by him, and on the 8th of November, 1912, John Thrasher, a brother of the plaintiff, called at the office of the company in Washington for the purpose of getting a settlement of plaintiff's account. It will be well to keep before us the parts of the testimony giving the versions of the respective parties of what occurred at the interview held at that time. Mr. Thomas' evidence is thus stated in the record: "Witness told Mr. Thrasher that the corporation was not in a position to pay him cash, but that it would give him a note; that the winter business was its best, and that from that time on he thought the company would be able to make him monthly payments for further shipments of cream; after some further talk Mr. Thrasher agreed to take a note and went away; nothing was said about whose note it should be, and nothing was said about witness joining with the corporation upon the note; or about other security for the payment of the note; that witness, as president of the company, had authority to execute notes for the corporation, and some time thereafter prepared the note in the form shown and sent it to the plaintiff, but he has no recollection of how he sent it;

that the note was signed by impressing the name of the corporation in the place for signature by the use of a rubber stamp and, to authenticate the signature of the corporation, witness signed his name under the rubber stamp impression; that he did not sign his name with the intent to make himself a party to the note, or liable thereon."

On cross-examination he said: "That he did not tell Mr. Thrasher that the note would be paid in full when it came due; that Mr. Thrasher did not decline to take the note of the Belmont Dairy Company; that the plaintiff resumed the shipment of cream before the note was sent to him; shipment having been stopped by the plaintiff a few days prior to November 8th; and that he knew the company was in financial difficulty at the time; would have given him a check, but on looking at his bank account found he had not funds to make a substantial payment."

John Thrasher said he went to Washington at the request of the plaintiff; that he "went to get money—it was cash he wanted; Mr. Thomas said he could not give him cash; that the company was short and offered him a note; he objected and declined to take a note but Mr. Thomas said if he would resume shipment he would send him a check or a note that would be paid; that was all he said. After some further conversation, finding that was the best he could do he agreed to take it. Mr. Thomas said if plaintiff would resume shipping they would be in position to pay monthly thereafter, but the cream subsequently shipped was never paid for; and upon cross-examination that he had related all that occurred as far as he can remember; that he went to the Belmont Dairy Company's office to get cash, but as he could not get cash, he agreed to take a note, because that was the best he could do; that he went home and reported to plaintiff and shipments were resumed."

The plaintiff (appellee) "testified that his brother reported the interview with Mr. Thomas and he resumed shipment and about ten days thereafter he received the note sued on by

mail; that it was enclosed in a piece of blank paper, in an envelope, without any writing; has had no communication from the defendant about the note, and no interview about it with him. Took the note for what it appears to be on its face."

After stating in chief what we have quoted above the defendant testified that the company had been doing business with the plaintiff for many years, he thought about sixteen years, and offered to prove that the plaintiff had accepted other notes of the corporation. An objection to that evidence was sustained and the action of the Court is presented by the first bill of exceptions. The proffer was not to prove that the plaintiff had accepted notes of the company in the form of the one sued on, but, regardless of that, proof of the acceptance of notes of the company in the past would not have reflected upon the issues in this case. The record shows that the company was not only in financial difficulty, which Mr. Thomas admitted was known to him, but it was declared a bankrupt on February 6th, 1913, which was before this note matured. The plaintiff might, therefore, have been willing to accept the company's notes in former years while he would not then have done so without security, and the inference to be drawn from the evidence is that something occurred at the interview mentioned which induced the plaintiff to resume shipments of cream. So without discussing it further, there can be no doubt about the correctness of the Court's ruling in the first bill of exceptions.

The third prayer of the plaintiff, "that the legal effect of the promissory note offered in evidence is *prima facie* to make the defendant Thomas personally liable as maker," will first be considered. That prayer announced a correct proposition of law. As we have seen, from the copy of the note above set out, the defendant did not affix the word president to his signature or in any way show on the note that he signed as an officer or agent of the company, but he simply signed, below the name of the company, his own name, and that too

to a note which read, "we promise to pay," etc.   If defend-
ant's intention had admittedly been to bind himself person-
ally his signature would have been just as it was on this note
and, although it is of course not conclusive, the use of the
expression, "we promise" may be said to have been at least
suggestive of such an intention, when considered in connec-
tion with the signatures.

We are not called upon to determine whether there would
have been any difficulty in holding the company liable on the
note by reason of the use of the rubber stamp, instead of the
name being written in ink, as the judgment is against Mr.
Thomas and not against the company, but the terms of the
note and the signature of the defendant are at least sufficient
to make him *prima facie* liable.   In *Haile* v. *Peirce,* 32 Md.
327, the Court said: "Where individuals subscribe their
proper names to a promissory note, *prima facie* they are per-
sonally liable, though they add a description of the character
in which the note is given, but such presumption of liability
may be rebutted, as between the original parties, by proof
that the note was in fact given by the makers as agents, with
the payee's knowledge."   And in *Sumwalt* v. *Ridgely,* 20
Md. 108, it is said: "The established rule seems to be, that
an agent in making a promise for a principal is liable on the
promise, unless it be expressed in terms which show that it
was made for and on behalf of the principal, and where an
agent makes a promissory note to a third person in terms
sufficient to bind himself as principal, the mere addition of
the word agent or other description of his office or capacity
to his signature does not change or vary the legal effect of
the promise itself."   The Negotiable Instruments Act pro-
vides in Section 39 of Article 13 of the Code that, "Where
the instrument contains, or a person adds to his signature,
words indicating that he signs for or on behalf of a princi-
pal, or in a representative capacity, he is not liable on the
instrument if he was duly authorized; but the mere addition
of words describing him as an agent, or as filling a repre-

sentative character, without disclosing his principal, does not exempt him from personal liability." The law as announced in the above cases has therefore been somewhat changed, but it does not affect a case such as this, unless it be that the inference is that when a note is made as this is and the individual signing does not in any way indicate that he signed only for the purpose of authenticating the company's signature, it was the intention to bind him personally.

Indeed under the construction placed on Section 15 of Article 13 by us in *Vanderford* v. *Farmers Bank,* 105 Md. 164, it may well be questioned whether the prayer was not more liberal to the defendant than the plaintiff was required to be, but treating the case as presented, and without deeming it necessary to go further, it seems to us clear that Thomas is at least *prima facie* personally liable as maker. Counsel for appellant said in his brief, "There is no case reported that counsel have been able to find where the signature to a note was like the signature at bar—*i. e.,* merely the name without the official designation—but the reports furnish one case, and that a most valuable one, where a cashier's draft was signed merely, 'Wm. Paton, Jr.' " That is the case of *Mechanics Bank of Alexandria* v. *Bank of Columbia,* 5 Wheat. 326. In that case, however, Wm. Paton, Jr., was the cashier of the Mechanics Bank and on the draft used by him was the name of the bank in two places. It was a bank draft and was in fact signed by the cashier, although he did not add "Cashier" to his name. The bank made the defense but the Court refused to let it escape for that omission.

In one of the cases relied on by the appellant, *Liebscher* v. *Kraus,* 74 Wis. 387, the Court after referring to some authorities which held that the corporations only were liable, said: "The principle of these authorities seems to be 'that if the agent sign the note with his own name alone, and there is nothing on the face of the note to show that he was acting as agent he will be personally liable, but if his agency appears with his signature, then his principal only is bound' " In-

deed without referring to them, other cases cited by the
appellant tend to sustain the contention of the appellee in
this case.

So without discussing the form of the prayer, we are of
the opinion that the appellant cannot complain of the prin-
ciple therein announced. The defendant's first prayer was
in our judgment properly rejected. It sought to take the
case from the consideration of the jury on the ground that
there was not sufficient evidence to justify a verdict for the
plaintiff. What we have already said in sufficient to indi-
cate our views on that question. The plaintiff's second prayer
as modified by the Court was as follows: "The plaintiff by
his counsel prays the Court to instruct the jury that if the
jury shall find from the evidence that the name E. C. Thomas,
the defendant, was by said E. C. Thomas written on the face
of the note sued on in this case, at the time said note was
issued, by the said E. C. Thomas, if the jury shall so find,
and if the jury shall further find that said note was by said
Thomas placed in an envelope, wrapped in a blank sheet of
paper and forwarded to said payee, B. Albert Thrasher, the
plaintiff, without any explanation or qualification of said
signature, then the verdict of the jury must be for the plain-
tiff, unless the jury shall find from the preponderance of evi-
dence that said Thomas signed said note as president of the
Belmont Dairy Company to authenticate the signature of
said company and not a joint maker with said Dairy Com-
pany, and such was the understanding between the parties
at or before said note was issued."

The defendant's second prayer as originally offered was
as follows: "The jury are instructed that if they find from
the evidence that the promissory note sued on was given to
the plaintiff by the Belmont Dairy Company, a corporation,
in consideration of a debt due plaintiff by said corporation,
and that the defendant, E. C. Thomas, was an officer of said
corporation, and that he prepared the note and stamped the
corporation's name thereon, with a stamp, and signed his

own name after the corporation's name, to complete the signature of the corporation, and not with the intention of making himself personally a party to said note, and liable for its payment, the verdict must be for the defendant." The Court struck out the last seven words and added these words, "and that such was the understanding between the parties at or before said note was issued, then their verdict must be for the defendant." The objection urged by the appellant to the modification of his prayer is that it required the jury to find affirmatively an understanding between the parties that Thomas should not be liable, while he contends that the rule announced in *Laflin and Rand Powder Co.* v. *Sinsheimer,* 48 Md. 411, only required the jury to find an absence of understanding to be liable. It is true that the expression used in the first prayer of the defendant in that case was "and that it was not the understanding or intention of either plaintiff or defendant, at the time the acceptance was made, that the defendant should be bound personally for the same," but the Court did not understand that prayer to have the narrow meaning contended for by the appellant in this case, as is shown by the opinion delivered by JUDGE ROBINSON, for after holding that it was permissible to offer parol evidence to explain the ambiguity in the acceptance and the circumstances under which it was made, said: "The evidence therefore offered in this case being admissible, if it established the fact that the bill was drawn for materials furnished the Lancaster Furnace & Mining Co., and the appellee was authorized, and did in fact accept it as treasurer of the corporation, and it was understood between the payee, plaintiff below, and the acceptor, that the latter was not to be liable personally, then the plaintiff was not entitled to recover, and there was no error in granting defendant's first prayer." In the later case of *Vanderford* v. *Farmer's Bank,* 105 Md. 164, JUDGE BURKE after saying that under the authority of *Ives* v. *Bosley,* 35 Md. 262; *Owings* v. *Baker,* 54 Md. 82, and *Keyser* v. *Warfield,* 100 Md. 72, it would be

open to the defendant, either under the general issue or under a special plea in bar to show that he was surety on the note and that he was discharged from liability thereon, said: "The principle announced in these cases is that if the contract set up is different from that which attached by presumption of law, it must be established by proof that it was the understanding of *all the parties to the instrument,* and it necessarily follows that if a different contract from that which arises from the terms of the instrument is relied on by special pleas in bar, it must be alleged and proven that such was the understanding of all the parties." It follows therefore that there was no error in the modification of the defendant's second prayer, and the plaintiff's second as granted contained in substance the same rule and was properly granted.

We do not understand why the plaintiff withdrew its demurrer to the third plea and made a motion of *ne recipiatur,* or why that motion was granted, but as the defendant was permitted to offer, under the general issue plea, evidence for the purpose of supporting such averments as were in the special plea, he was not injured by having the plea stricken out and hence it is unnecessary to pass on the motion.

It follows from what we have said that the judgment must be affirmed.

> *Judgment affirmed, the appellant to pay the costs, above and below.*