GEORGE C. NORMAN, PLAINTIFF-RESPONDENT, v. CHRIS-
TOPHER A. BELING, DEFENDANT-APPELLANT.

Argued May 23, 1960—Decided June 28, 1960.

Mr. *Irwin I. Kimmelman* argued the cause for the defendant-appellant (*Messrs. Hannoch, Weisman, Myers, Stern & Besser,* attorneys).

Mr. *Donald B. Jones* argued the cause for the plaintiff-respondent (*Mr. Frank W. Hoak,* on the brief).

The opinion of the court was delivered by

BURLING, J. Plaintiff, an endorsee of a series of promissory notes, brought suit in the Essex County District Court against the defendant alleging that the defendant was liable on the notes as a co-maker. After a trial without a jury, the trial court entered judgment in favor of defendant. Plaintiff appealed and the Superior Court, Appellate Division, reversed the trial court and remanded the cause for entry of judgment in favor of plaintiff. 58 *N. J. Super.* 575. We granted certification. 31 *N. J.* 556.

The following is a sample of the notes being sued upon in the instant case:

| $50.00 | April 8 | 19 57 |
|---|---|---|
| Three Hundred sixty-six days AFTER DATE | We | PROMISE TO |
| PAY TO THE ORDER OF | J. H. Laporte and Company | |
| Fifty and 00/100 ....... ... . ..... ......... | | DOLLARS |
| PAYABLE AT | National State Bank of Newark | |
| VALUE RECEIVED | TEAL CORPORATION | |
| | J. Harold Semar | |
| No. ___ DUE April 1, 1958 | Christopher A. Beling | |

Except for dates of maturity, the notes involved were identical to the above. In all of the notes, "Teal Corporation" was typewritten on the notes and the individuals' signatures were in handwriting.

It appears that the Teal Corporation, of which the defendant in this suit, Christopher A. Beling, was treasurer, owed a debt to J. H. Laporte & Company for services performed for the corporation. Laporte met with Beling and J. Harold Semar, president of Teal, to discuss a manner of payment of the debt. Apparently no agreement was reached but subsequently Laporte received 36 notes in the mail similar in form to the note reproduced above and having staggered maturity dates. The notes were thereafter negotiated to plaintiff. It appears to be conceded that plaintiff had no knowledge of the basis of the transaction between Teal and

Laporte or the relationship of Beling and Semar to the corporation.

The first twenty-one of the notes to become due were presented as directed in the notes and were honored by the Teal Corporation. None of the subsequently due notes were honored. Plaintiff thereupon resorted to Beling for satisfaction, and the present suit was instituted. The original complaint alleged that three of the outstanding notes had become due and were dishonored; but at the time of the hearing in the trial court a supplemental complaint was filed alleging that the remaining twelve notes had since become due and had been dishonored.

At the trial, plaintiff introduced the notes into evidence, then rested his case. Defendant thereupon sought to introduce evidence tending to show that defendant intended to sign the notes in his capacity as an officer of the corporation and not as a maker. The basis of this offering was that the notes were ambiguous on their face as to defendant's status with relation to the notes. The trial court allowed the evidence over plaintiff's objection. The effect of this evidence tended to show that Semar was president and Beling treasurer of the Teal Corporation, that they had signed the notes in those capacities in accordance with the corporation's by-laws, and that they never intended to bind themselves individually.

On this record, the trial court entered judgment for defendant, having found that defendant's status on the notes was not clear from a reading of the notes and that defendant intended to sign the notes in a representative capacity rather than in a manner which would bind him personally. On appeal, the Superior Court, Appellate Division, held that the instruments revealed unambiguously that defendant bound himself individually on the instruments because the form of the signature would lead a reasonably prudent man to believe that such an effect was intended. On this basis the Superior Court, Appellate Division, reversed the trial court and ordered judgment en-

tered in plaintiff's behalf. We must decide, therefore, whether the defendant, because of the form of his signature, was liable on the instruments without resort to extrinsic evidence, or whether the instruments were so ambiguous on this point as to require parol evidence to explain the subscriber's intent. If the latter course is selected, we must then decide whether the parol evidence supports a conclusion that defendant is not individually liable on the notes.

First, we should note that the negotiable instruments statute does not provide a solution to the problem. The section of that statute relevant to the problem at hand states:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." *R. S.* 7:2–20.

Thus, phrased in terms of the negotiable instruments statute, the question to be decided is whether a negotiable instrument signed in the manner of those presently being sued upon contains anywhere on its face words indicating that the individual has signed for or on behalf of a principal.

Counsel have not cited, nor has our own research disclosed any case involving notes of precisely the same form as those in question here. There are, however, many cases involving notes containing language to the effect that "we promise to pay * * *," etc., signed with a corporate name, immediately followed by the name of an individual without express indication that the individual intended to sign in a representative capacity. For example, in *Belmont Dairy Co. v. Thrasher,* 124 *Md.* 320, 92 *A.* 766 (*Ct. App.* 1914) the note stated

"We promise to pay * * * " and was signed simply:
               Belmont Dairy Co.
               E. C. Thomas.

In an action by the payee against Thomas on the note, the court held that the note itself did not reveal unambiguously whether Thomas signed as a co-maker or merely on behalf of the Dairy Company. To clarify this ambiguity, extrinsic evidence was held admissible to demonstrate that Thomas signed the note as a representative of the Dairy Company and did not intend to bind himself personally on it. In *Austin, Nichols & Co., Inc. v. Gross,* 98 *Conn.* 782, 120 *A.* 596 (*Sup. Ct. Err.* 1923), a draft was signed "M. Gross." In the left hand corner of the instrument appears: "State Street Grocery Co., Inc., 161 State St., Hartford, Conn." In an action by the payee against Gross, it was held that the face of the instrument was ambiguous as to defendant's capacity as a co-maker or agent, and hence extrinsic evidence would be allowed to reveal the intent of the defendant with respect to his status on the instrument. In *Canton Provision Co. v. Chaney,* 70 *N. E.* 2d 687 (*Ohio Ct. App.* 1945) a check was signed:

> "Finer Foods
> Jack Chaney"

In an action by the payee against Chaney, it was held that because the check did not reveal unambiguously whether defendant was a co-maker or a mere agent acting in behalf of his principal, extrinsic evidence was admissible to explain the intent with which the signature was made. Other cases reaching this result in similar situations are: *First State Bank of Denton v. Smoot-Curtis Co.,* 121 *S. W.* 2d 667 (*Tex. Civ. App.* 1938); *Fricke v. Belz,* 237 *Mo. App.* 861, 177 *S. W.* 2d 702 (*Ct. App.* 1944); *Dunbar Box & Lumber Co. v. Martin,* 53 *Misc.* 312, 103 *N. Y. S.* 91 (*App. T.* 1907). *Cf. Rood v. McCann,* 103 *Ohio App.* 55, 144 *N. E.* 2d 263 (*Ct. App.* 1957); *Hoffstaedter v. Lichtenstein,* 203 *App. Div.* 494, 196 *N. Y. S.* 577 (*App. Div.* 1922). It would appear, therefore, that there is ample authority to hold that a negotiable instrument signed in the following form:

> "**XYZ** Corporation
> **John Doe**"

is *prima facie* the note of the corporation but that the status of the individual as a co-maker or agent acting for a principal cannot definitely be ascertained from the signature alone and therefore, unless some other portion of the note clears the confusion, extrinsic evidence is admissible to clarify the ambiguity. There are cases apparently to the contrary, *i. e.*, which would deny the use of extrinsic evidence and also hold the individual liable as a matter of law. See, *e. g., Murphy v. Reimann Furniture Mfg. Co.*, 183 *Or.* 474, 193 *P. 2d* 1000 (*Sup. Ct.* 1948); *Toon v. McCaw*, 74 *Wash.* 335, 133 *P.* 469, *L. R. A.* 1915*A*, 590 (*Sup. Ct.* 1913); *Way v. Lyric Theater Co.*, 79 *Wash.* 275, 140 *P.* 320 (*Sup. Ct.* 1914).

We agree, however, with the holding of the cases first discussed, *i. e.*, those holding the form of signature being discussed as ambiguous, permitting extrinsic evidence to be admitted to explain it. Corporations must act by means of agents, *Bankers' Trust Co. v. International Ry. Co.*, 207 *App. Div.* 579, 202 *N. Y. S.* 561, 567–568 (*App. Div.* 1924), affirmed 239 *N. Y.* 619, 147 *N. E.* 220 (*Ct. App.* 1925), and it is common to expect that a corporate name placed upon a negotiable instrument in order to bind the corporation as a maker, especially when typewritten on the instrument, will be accompanied on the instrument by the signature of the person or persons authorized by the by-laws to sign such instrument. *First State Bank of Denton v. Smoot-Curtis Co., supra.* See *L. W. Cox & Co., Inc. v. Chemical Bank & Trust Co.*, 175 *Misc.* 1063, 26 *N. Y. S. 2d* 38, 42 (*City Ct.* 1941). In light of this, we are led to the conclusion that a reasonably prudent man would be unable to determine with any degree of certainty from the signatures on a note in the following form:

> "XYZ Corporation
> John Doe"

whether John Doe was a co-maker of the instrument or whether he placed his name on the instrument as an agent

of the corporation acting only on its behalf. Certainly a reasonably prudent man, in light of the decisions discussed above, would not accept the instrument, despite the factual uncertainty, relying on the individual's liability's being raised as a matter of judicial construction. For the above reasons, and since the ambiguity exists on the face of the instrument, parol evidence is admissible to determine the status on the instrument of the individual whose signature presents the ambiguity.

Thus far we have been discussing the situation of a negotiable instrument signed in the following form:

> "XYZ Corporation
> John Doe"

when the action was by the payee against Doe. Does the same principle apply when the signature is in the following form:

> "XYZ Corporation
> John Doe
> Richard Roe"

and the action is by an endorsee to whom the instrument has been negotiated by the payee and against Roe, *i. e.*, the situation in the instant case? We hold that the same principle applies and that the second situation should produce the same result as the first.

It is true that here, unlike in the cases discussed above where a single individual signature was involved, there are two signatures following the corporate name, and that the person sought to be held is he who placed the second signature on the instrument. We do not consider this factor decisive, however, because it is a frequent occurrence for corporate by-laws to require the signatures of two officers on instruments binding the corporation. Good accounting practice recommends this procedure. *Finney, Principles of Accounting, Introductory* 342 (*3d* ed. 1948); *Brink, Cashin, Internal Auditing* 113 (*2d* ed. 1958). The

instant case is not, we should note, like those cases where the instrument was signed

"XYZ Corporation
by John Doe
Richard Roe"

or

"XYZ Corporation
John Doe, President
Richard Roe"

See *Lazarov v. Klyce,* 195 *Tenn.* 27, 255 *S. W.* 2d 11 (*Sup. Ct.* 1953); *Farmers' State Bank of Newport v. Lamon,* 132 *Wash.* 369, 231 *P.* 952, 42 *A. L. R.* 1072 (*Sup. Ct.* 1925). On the contrary, in the instant case the second signature is identical in form to the first. If there is in this case a reasonable uncertainty as to whether the first signature was placed on the instrument in a representative capacity, then the same uncertainty exists as to the second signature under the facts of this case.

Nor is any different result indicated because the body of the instrument contains the phrase "We promise to pay * * *." As was stated in *Reeve v. First National Bank,* 54 *N. J. L.* 208, 211 (*E. & A.* 1891):

"I do not perceive any significance in the use of the words 'we promise to pay' instead of 'the company promises to pay.' The contention was that the use of these words raised an implication that it was the joint note of the corporation and of Warrick. But * * * the word 'we' is often used by a corporation aggregate."

██ Finally, we do not believe that the use of extrinsic evidence to clarify an ambiguity present on the face of the note should be forbidden because the person suing on the notes is an endorsee of the payee and was not a party to and is without knowledge of the circumstances under which the notes were delivered, in short, a holder in due course for all purposes except that the face of the note contains

an ambiguity. When a defect by way of ambiguity is suggested by the *face* of the instrument the purchaser is put on inquiry because to permit the purchaser to ignore such a warning with impunity has no sound basis. *Brannan, Negotiable Instruments Law,* 708 (*Beutel, 7th ed.* 1948). Such appears to be the settled rule in this State. *Phelps v. Weber,* 84 *N. J. L.* 630 (*E. & A.* 1913). As was said in *Germania National Bank of Milwaukee v. Mariner,* 129 *Wis.* 544, 109 *N. W.* 574 (*Sup. Ct.* 1906):

> "It is elementary that, in case a written contract is ambiguous in its terms, parol proof of the facts and circumstances under which it was executed may be introduced to aid in its construction. This rule applies to commercial paper, even in the hands of third persons, because, where the ambiguity is apparent to a reasonably prudent man on the face of the paper, he is necessarily put on inquiry." 109 *N. W.*, at *p.* 576.

It has been held, however, in a situation similar to the instant case that parol evidence, although admissible against a payee, would not be allowed to defeat the rights of an endorsee without actual knowledge of the individual's status on the instrument. *Kraushaar v. Lloyd,* 152 *Misc.* 269, 273 *N. Y. S.* 231 (*App. T.* 1934). We choose to follow, however, the rule stated in the *Phelps* and *Germania National Bank* cases.

We conclude, therefore, that the instruments in question contained an ambiguity on their face as to whether the defendant was a co-maker of the notes or signed merely in a representative capacity, and that parol evidence was admissible to clarify the ambiguity in the action by the plaintiff. Concerning the effect of the extrinsic evidence, suffice it to say that we join in the conclusion of the trial court that the defendant signed in a representative capacity. Thus we hold that the defendant should prevail. Accordingly, the judgment of the Superior Court, Appellate Division, is reversed, and the judgment of the Essex County District Court is reinstated.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.