PLEMENS, Trustee, Etc. *v.* DIDDE-
GLASER, INC.

[No. 492, September Term, 1965.]

558

*Decided December 7, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Joseph Pickus,* with whom were *Hyman P. Tatelbaum* and *Reuben Shiling* on the brief, for appellant.

*Charles T. Albert,* with whom were *Piper & Marbury* and *H. Rutherford Turnbull, III,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

This case involves an appeal by P. Steven Plemens, trustee for the benefit of the creditors of Slatkoff-Tuvin, Inc. (Slatkoff-Tuvin), from an order of Judge John E. Raine, Jr., of the Circuit Court for Baltimore County, in favor of Didde-Glaser, Inc. (Didde-Glaser), which was found to have a security interest in certain machinery it had sold to Slatkoff-Tuvin.

The case was submitted to the court below on a stipulation of facts. Didde-Glaser, Inc. of Kansas sold a "Speed-Klect Collator" to Slatkoff-Tuvin, Inc., of Baltimore County, Maryland, under a conditional sales contract dated April 3, 1965. The contract was executed by Kenneth C. Slatkoff signing as president of and on behalf of Slatkoff-Tuvin, Inc., and by William F. Hegenbart signing as secretary-treasurer of and on behalf of Didde-Glaser, Inc.

A blank financing statement was taken by Mr. Al Malachuk, a sales representative of Didde-Glaser, to the office of Slatkoff-Tuvin, where the blanks were filled in and Kenneth C. Slatkoff signed his name in the place indicated for "Signature of Debtor." Mr. Slatkoff's name was typed below his signature. Mr. Malachuk then forwarded the financing statement to the home office of Didde-Glaser where it was signed by William F. Hegenbart in the place indicated for "Signature of Secured Party." Mr. Hegenbart's name was typed below together with the words "Sec'y.-Treas." The financing statement was returned to Mr. Malachuk, who presented it for filing in the financing statement records of Baltimore County, where it was received for record on April 13, 1965. The financing statement was indexed solely under the corporate names of the parties. The financing statement in pertinent part read as follows:

(Near the top of the financing statement in paragraphs 1 and 2)

"1. Debtor
    Name    Slatkoff-Tuvin, Inc.
    Address 443 Eastern Avenue (rear) Essex,
            Maryland 21221

"2. Secured Party

Name    Didde-Glaser, Inc.
Address  W. 12th Avenue & Graphic Arts St.,
         Emporia, Kansas
         Jerry Bedner, Didde-Glaser, Emporia, Kansas
         Person and Address To Whom Statement Is
         To Be Returned If Different From Above.

* * *

(At the bottom of the financing statement)

"Wm. F. Hegenbart
(Signature of Secured Party)
Wm. F. Hegenbart, Sec'y.-Treas.
Type or Print Above Name on Above Line

"Kenneth C. Slatkoff
(Signature of Debtor)
Kenneth C. Slatkoff
Type or Print Above Signature on Above Line

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Signature of Debtor)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Type or Print Above Signature on Above Line"

At the time the conditional sales contract and the financing statement were signed Kenneth Slatkoff was in fact president of Slatkoff-Tuvin, and Mr. William F. Hegenbart was in fact secretary-treasurer of Didde-Glaser, and both men were authorized to sign those documents on behalf of their respective corporations, and did so with the intent to authenticate the same on behalf of those corporations. There had been no prior dealings between either Mr. Malachuk and Mr. Slatkoff, or Mr. Hegenbart and Mr. Slatkoff in their individual capacities.

On October 12, 1965, Slatkoff-Tuvin executed a deed of trust conveying all its property and estate to P. Steven Plemens in trust for the benefit of its creditors. The trustee challenged the sufficiency of the financing statement in question on the ground that it was improperly signed by the debtor and thus resulted in an unperfected security interest, placing Didde-Glaser after the trustee with respect to priorities. The court found

substantial compliance with the requirements of the Uniform Commercial Code (Code (1964 Repl. Vol.), Article 95B) and ordered that Didde-Glaser could retain the proceeds of the sale of the machine, free and clear from any claim by the trustee. The court, upon petition by the trustee, passed an order authorizing the trustee to file an appeal, and this appeal followed.

To be sufficient, a financing statement must be signed by the debtor and the secured party, must give mailing addresses of both parties, and must contain a sufficient description of the type, or items, of collateral. Section 9-402 (1). "Signed" is the key word in the present case, since it is not contended that the name and address of the secured party and of the debtor are incorrectly stated [1] or that the description of the collateral is insufficient.[2] Nor is this a case of the lack of a typed, printed, stamped, or written "signature" of the secured party or the debtor.[3] The sole question in this case is whether the signature

---

1. See *e.g., In re Causer's Town & Country Super Market, Inc.,* U.S.D.C. (N. D. Ohio March 3, 1965), 2 U.C.C. Rep. 541 (A financing statement which named the debtor as "Robert and Grace Causer, Causer's Town & Country Super Market, Inc." instead of the correct name "Causer's Town & Country Super Market, Inc." and which failed to contain the signature of the debtor, was not effective against the trustee.); *In re Smith,* 205 F. Supp. 27 (E.D. Pa. 1962) (The financing statement did not contain the mailing address of the debtor, thus it was found to be defective.); *Sales Finance Corp. v. McDermott Appliance Company, Inc.,* 340 Mass. 493, 165 N. E. 2d 119 (1960) (The abbreviation "Co." was used in the signature instead of "Company." The financing statement was held effective.).

2. See *e.g., Howarth v. Universal C.I.T. Credit Corp.,* 203 F. Supp. 279 (W. D. Pa. 1962); *Yancey Bros. Co. v. Dehco, Inc.,* 108 Ga. App. 875, 134 S. E. 2d 828 (1964); *National Cash Register Co. v. Firestone & Co.,* 346 Mass. 255, 191 N. E. 2d 471 (1963).

3. *Benedict v. Lebowitz,* 346 F. 2d 120 (2d Cir. 1965) (The corporate name and address were typed in the space provided for the secured party at the top of the form, but there was no signature of any kind in the spaces provided for the secured party at the bottom of the form. The financing statement was found to be sufficient.); *In re Carlstrom,* U.S.D.C. (Me. Oct. 4, 1966), 3 U.C.C. Rep. 764 (The corporate name of the secured party was typed above the signature line and beneath that typed name was typed, "By                    ," but nothing appeared on that line. The financing statement was found to be invalid.); *In re Horvath,*

of Kenneth C. Slatkoff, without an indication that he signed as an authorized representative of the debtor corporation named in paragraph 1 of the financing statement, was so defective as to constitute substantial noncompliance with the provisions of Article 95B.

The Code includes within the definition of "signed" any symbol executed or adopted by a party with present intent to authenticate a writing. Section 1-201 (39). What is meant by this definition is that a complete signature is not necessary. That is, authentication of the document may be accomplished by a printed, stamped, or written symbol. In dealing with such symbol, it must be determined whether the symbol was executed or adopted by the party with present intention to authenticate the writing.[4] See Official Comment 39 to Section 1-201 (39). In construing those provisions, courts must be mindful of the provisions of Section 1-102 which, in summary, state that Article 95B is to be liberally construed so as to promote the simplification, clarification, and modernization of the law governing commercial transactions by recognizing the customs, usages, and agreements common in commercial practices, and to make uniform the law among the various jurisdictions.

Appellant argues that the signature of an individual is not the signature of a corporation and that the signature of an individual can not authenticate a corporate signature. He cites as controlling Section 3-403 (2) (a) and (b),[5] which obligates

U.S.D.C. (Conn. July 19, 1963), 1 U.C.C. Rep. 624 (The facts are exactly the same as in the case just cited, except that the court found the financing statement to be effective.).

4. Section 9-402 does not require that the financing statement be acknowledged or witnessed or accompanied by affidavits of good faith. *Lincoln Bank & Trust Co. v. Queenan*, 344 S. W. 2d 383 (Ky. Ct. App. 1961). See also Official Comment 3 to § 9-402.

5. "Section 3-403 (2) An authorized representative who signs his own name to an instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity; (b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative

personally an authorized representative who signed an instrument for a principal in his own name without indicating any representative capacity, and Code (1957), Article 23, Section 5 (a) (1),[6] which sets out prerequisites for corporate names. No personal liability is created by the execution of a financing statement. The creation of liability between the parties is the purpose of the execution of a security agreement or other instrument. The financing statement is a paper separate and apart from the security agreement itself, although a copy of the agreement may suffice as the financing statement if it is signed by both parties and meets the other requirements of Section 9-402. *Lincoln Bank & Trust Co. v. Queenan,* 344 S. W. 2d 383 (Ky. Ct. App. 1961). See Official Comment 1 to Section 9-402. A signed financing statement is filed for the purpose of showing that the statement is genuine and can be accepted for filing. *Benedict v. Lebowitz,* 346 F. 2d 120 (2d Cir. 1965) ; *In re Carlstrom,* U.S.D.C. (Me. Oct. 4, 1966), 3 U.C.C. Rep. 764 (Uniform Commercial Code Reporting Service, published by Callaghan & Co.). The purpose of recording financing statements under the Code is to provide any interested person, not with all the information he needs to understand a secured transaction, but only with the information that such a transaction has taken place and that the particulars may be obtained from the named secured party at the address shown as provided in Section 9-208.[7]

---

capacity." Appellant also cites *Universal Lightning Rod, Inc. v. Rischall Electric Co.,* 24 Conn. Sup. 399, 192 A. 2d 50 (a Code case), and *Belmont Dairy Co. v. Thrasher,* 124 Md. 320, 92 Atl. 766 (a pre-Code case) both of which dealt with the liability of an agent who signed a *note* without indicating his agency.

6. "Article 23, § 5 Corporate name. (a) (1) Shall be such as to indicate that it is a corporation. This provision shall be deemed to be complied with if the name contains the word 'corporation,' 'incorporated' or 'limited'; or ends with an abbreviation of one of such words; or ends with the word 'company,' if such word is not immediately preceded by the word 'and' or any symbol therefor."

7. Section 9-402 adopts notice filing. "The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." Official Comment 2 to § 9-402. One of the avenues of

In the present case, it was stipulated that both Mr. Slatkoff and Mr. Hegenbart were authorized to sign the conditional sales contract and the financing statement on behalf of their respective corporations and did so with the intent to authenticate those documents on behalf of those corporations. Such authorization is sufficient and need not be filed. *In re State Discount Furniture Co., Inc.,* U.S.D.C. (Conn. Jan. 22, 1964), 2 U.C.C. Rep. 20. Mr. Slatkoff's signature on the line designated "Signature of Debtor" indicates he was signing for the debtor. The name and address of the debtor is clearly indicated in paragraph 1 of the financing statement. The financing statement was indexed under the corporate names, and there is no showing that any one was misled by this signature. Minor errors which are not seriously misleading do not render ineffective the financing statement which substantially complies with the requirements of Section 9-402 (5).[8]

A case which is similar to the present one and in which Section 9-402 (5) was construed is *In re Excel Stores, Inc.,* 341 F. 2d 961 (2d Cir. 1965). In that case, there were two stores in a shopping center in Pawcatuck, Connecticut, which were operated under the same management and as part of a single venture. One was named "Excel Stores, Inc.," which was a Connecticut corporation, and the other, a Massachusetts corporation, was named "Excel Enterprises, Inc." Cash registers were sold through a conditional sales agreement to Excel Stores, but the treasurer of Excel Stores, Inc., Andrew F. Machado, inadvertently made the mistake of writing "Excel Department Stores" instead of "Excel Stores, Inc." when he filled out the security agreement, adding, after the printed word "by", his signature, "Andrew F. Machado." These names were subsequently typed by the creditor in an appropriate place indicated

---

inquiry open to the potential creditor dealing with the debtor is to require him to produce a statement from the secured party showing a list of the collateral held by the secured party. *Yancey Bros. Co. v. Dehco, Inc.,* supra, note 2.

8. "Subsection (5) is in line with the policy of this Subtitle to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." Official Comment 5 to § 9-402.

in the agreement. No question was raised with respect to the filing of the contract as a financing statement. The district court held that the contract was not a sufficient compliance with Section 9-402 because it was not properly signed. The Circuit Court of Appeals reversed the lower court and held that there was no doubt that "any creditor of Excel or other interested person searching the record would come to the Excel Department Store at the Shopping Center of Pawcatuck, find Machado's name and be put on notice that a lien against Excel might be outstanding and that a communication with Machado might be appropriate." 341 F. 2d at 963.

A court, which has construed Section 9-402 (5) as serving only to cure such minor signature shortcomings as misplacements, misspellings, and abbreviations [9] has held that a signature by an authorized representative which did not reflect the capacity of the signer to act on behalf of his principal, did not render the financing statement ineffective. *In re Turcotte,* U.S.D.C. (Me. Oct. 4, 1966), 3 U.C.C. Rep. 773. See also *In re Bengtson,* U.S.D.C. (Conn. Dec. 15, 1965), 3 U.C.C. Rep. 283.

The financing statement was duly filed and was proper in all respects, except for the lack of the indication of representative capacity of one of the signers. The financing statement was indexed solely under the corporate names of the party. Any person who was interested in the debtor corporation could have found the financing statement under the corporation's name. The fact that a corporation has as part of its name the surname of the person who is the subject of the search would put the potential creditor on notice that there may be some connection between the two.[10] The fact is that no prior financing state-

---

9. *In re Carlstrom, supra,* note 3.

10. *In re Excel Stores, Inc.,* 341 F. 2d 961 (2d Cir. 1965); *In re Platt,* U.S.D.C. (E.D. Pa. Feb. 3, 1966), 3 U.C.C. Rep. 276, affirmed U.S.D.C. (E.D. Pa. Aug. 8, 1966), 3 U.C.C. Rep. 717 (The financing statement filed by F. C. A. named only Platt Fur Co. as debtor (Henry Platt not being named). The financing statement was indexed only under the name of Platt Fur Co. The referee found that a search of the public records under the name of Henry Platt would not have disclosed F.C.A.'s interest. The court held that the names were sufficiently related to require those who searched

ments were executed by Mr. Slatkoff which would mislead third parties, nor was there any potentially misleading change in the organization of the debtor corporation.[11] There is nothing in the evidence to indicate that any one searching the records would be misled by the fact that the signature did not relate the representative capacity of Mr. Slatkoff.

For these reasons we hold that the financing statement substantially complied with the requirements of the Code, so that the order of the lower court must be affirmed.

> *Order affirmed, costs to be paid by appellant.*

---

the records to make further investigation.); *In re Bengtson,* U.S.D.C. (Conn. Dec. 15, 1965), 3 U.C.C. Rep. 283, 287 (In the space provided at the top of a financing statement for the name and address of the debtor was "Bruce's Vernon Circle Service" and its address. In the space provided at the bottom of the form for the signature of the debtor was "Bruce R. Bengtson." "Bruce's Vernon Circle Service" was not the name of the debtor, and the court found that a potential creditor searching the record (which in Conn. is done by a telephone call or a letter to the Secretary of State) would not learn of the existence of the financing statement if he inquired as to Bruce Bengtson. The court held, citing *In re Excel Stores, Inc., supra,* that "even though a trade name is placed on the financing statement which might result (as it did here) in misleading indexing in the office of the Secretary of State, this in and of itself, would not invalidate the financing statement * * * ").

11. Compare *In re Pennar Paper Company,* U.S.D.C. (E.D. Pa. Sept. 21, 1964), 2 U.C.C. Rep. 659 (A bank filed a financing statement signed by the debtor, a proprietorship. Subsequently, the proprietorship was incorporated, and new financing statements were filed. The amendment designated the debtor as "Pennar Paper Company, a corporation." Both the old and amended statements were signed by the individual proprietor-predecessor of the corporation. In addition there was found to be an inadequate and inconsistent description of the collateral in the financing statements. For those reasons the statement was found inadequate.).