In the Matter of DOOR SUPPLY CENTER, INC. dba D & G Custom Doors, Inc. and D & G Custom Doors, Bankrupt.

Richard W. SWENEY, Trustee, Plaintiff,

v.

CARDINAL DOORS, INC., Defendant.

Bankruptcy No. 79–01378 A.

United States Bankruptcy Court, D. Idaho.

Feb. 27, 1980.

Richard W. Sweney, Coeur-D-Alene, Idaho, for plaintiff.

Eric Nordlof, Coeur-D-Alene, Idaho, for defendant.

## MEMORANDUM DECISION

MERLIN S. YOUNG, Bankruptcy Judge.

This matter is before the Court upon trustee's motion seeking a judgment on the pleadings or in the alternative for a summary judgment holding that defendant failed to perfect its security interest against him as a hypothetical judgment creditor under section 70(c) of the Bankruptcy Act. Trustee also seeks permission to sell the machinery, equipment and inventory of the bankrupts free and clear of the defendant's security interest.

The debtor corporation and the defendant creditor entered into a written agreement that granted defendant a secured interest in:

". . . (I). All of the inventory and stock in trade of Debtor, including raw materials, work in progress, materials used or consumed in Debtor's business, finished goods, returned goods, goods traded-in, all together with all property of the same or similar nature hereafter acquired by Debtor and together with all proceeds and products of any thereof; (II) All accounts receivable of Debtor now or hereafter existing and all proceeds therefrom; (III) All contract rights of Debtor now or hereafter existing under contracts giving rise to payments to or for Debtor for goods or services to be provided or performed by Debtor and all proceeds therefrom; and (IV) All general intangibles of Debtor to the extent of all intangible interests not constituting accounts or contract rights, and all proceeds therefrom. In all cases proceeds includes cash non-cash proceeds including but not limited to instruments, chattel paper, title documents, deposits and funds. Any deposits or any other money now or hereafter owed by Secured Party to Debtor at any of the branches of Secured Party shall (as collateral in the possession of Secured Party) constitute additional security for obligations secured hereby and irrespective of the adequacy of security interests or collateral therefor otherwise held by Secured Party. Without limiting the generality of the foregoing, rights which Debtor now or hereafter may have against persons who guarantee payment or collection of any account, contract or item covered hereby shall be included as a general intangible hereunder, as shall present and future rights to rental income, tax refunds, causes of action and proceeds of judgment.

Without limiting the generality of the foregoing designation of property and interests subject hereto, types of inventory, nature of accounts or specific accounts or contracts may (but need not) be more particularly identified as doors, door parts, jambs, stops, casing, locks, hardware, paint, stain, tools, office equipment and supplies, hinges and inserts."

A financing statement filed with the Secretary of State described the collateral as follows: "Doors, door parts, jambs, stops, casing, locks, hardware, paint, stain, tools, equipment and supplies, hinges and inserts", and also provided that proceeds and products were covered. The same financing statement contained four names in the debtors box; the first two being Douglas D. Klinge and Glenda J. Klinge and the d/b/a name of the bankrupt "D & G Custom Doors", followed by the corporate name of the bankrupt. The financing statement was signed by Doug Klinge and Glenda Klinge as individuals, with no indication that they were signing as officers of the corporate bankrupt herein.

■■ On these facts I conclude that plaintiff is entitled to a partial summary judgment authorizing him to sell any equipment or machinery owned by and in the possession of bankrupt on the date of bankruptcy that is not "office equipment." This is because the defendant perfected its security interest only in those items of collateral described in the financing statement. A financing statement, if more limited in scope than the security agreement which it perfects, limits the collateral in which the creditor has a perfected security interest to that description as against third party creditors and a trustee in bankruptcy. See *Gulf National Bank v. Franke*, 563 F.2d 766; Idaho Code § 28–9–402(1) (1967). *In re Levine* 6 U.C.C.Rep. 239 (D.Conn.1969). The purpose of a financing statement is to give public notice of the type of collateral that may be subject to a security interest and that purpose is subverted if a third party cannot reasonably ascertain from the financing statement the type of collateral as distinguished from the particular items of collateral which may be subject to a particular security interest. Although the financing statement explicitly covers "tools", the word tool in my opinion establishes a security interest only in hand tools of the bankrupt and not in power equip-

ment or machinery. A tool is defined as a hand operated device or instrument used to facilitate mechanical operations and is not thought of as a piece of powered machinery. *Dept. of Treasury, Gross Income Tax Division v. Ranger-Cook, Inc.*, 114 Ind.App. 107, 49 N.E.2d 548, 550; *State v. Green*, 245 Or. 319, 422 P.2d 272, 274. A tool can be a simple inexpensive machine but not a complicated one. *Thresher v. McEvoy* (Tex.Civ. App.) 193 S.W. 159, 161.

■ While a financing statement may have the effect of restricting the perfection of a security interest created by a security agreement, the opposite is not true. The financing statement cannot expand the security provided for in the security agreement. *In re Mitchell v. Shepherd Mall State Bank*, 324 F.Supp. 1029 (W.D.Okla., 1971). In the case at bar the security agreement only covers "office equipment" and thus overrides the broader "equipment" language of the financing statement.

■ The balance of plaintiff's contentions are not well taken. The financing statement listed the Klinges and D & G Custom Doors as debtors in addition to bankrupt. The plaintiff contends that this error resulted in the financing statement not being indexed under the name of the bankrupt by the Secretary of State. If the Secretary of State had properly cross-referenced these names, which is standard practice, any third party creditor could have found the existing lien on the debtor's property. A request for a search by defendant did produce a UCC–4 showing the secured party's lien, although plaintiff's request did not. I conclude that the defendant should not be penalized by the failure of the Secretary of State to fully index the Financing Statement.

■ The plaintiff also contends that the financing statement was not signed by the debtor as required by Section 28–9–402(1). Technically, the bankrupt's signature on the financing statement should have been signed by an officer of the bankrupt in his representative capacity, but case law holds that if a diligent creditor who checked the Financing Statement would have been put on notice of the existence of a claimed lien by the corporate creditor, a defect in the debtor's signature is not fatal. *Plemens v. Didde-Galser, Inc.*, 244 Md. 556, 224 A.2d 464 (1966).

Additionally, the trustee contends that the execution of the security agreement by the officers was never authorized or ratified by the Board of Directors of the bankrupt as required by the by-laws of the bankrupt. Since the trustee has not submitted any evidence on this point, the court cannot presently entertain this contention.

■ Finally, the trustee alleges that the financing statement does not describe after-acquired property as collateral. There is no statutory requirement that a financing statement contain an after-acquired property clause in order to perfect a security interest in such property. *American National Bank and Trust Co. of Sapulpa v. National Cash Register Co.*, Okl., 473 P.2d 234, 7 U.C.C.Rep. 1097; Idaho Code Section 28–9–402. A financing statement describing certain collateral puts the world on notice not only of a secured interest in that particular type of property, but also alerts third party creditors to the fact that a perfected secured interest may attach to any after-acquired property of the type referred to in the financing statement. *Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775, 10 U.C.C.Rep. 11. Therefore, any after-acquired property of the type listed in the financing statement are perfected as against plaintiff.

The Court requests that the plaintiff prepare a formal judgment regarding this partial summary judgment for the court's approval and signature.