**In the Matter of James Allen FIRTH, d/b/a National Photo Copy Equipment Co., Bankrupt.**

**No. 20829.**

United States District Court,
M. D. Georgia,
Macon Division.

Sept. 6, 1973.

**370**

Fred H. Hodges, Jr., Macon, Ga., for First National Bank.

J. Coleman Tidwell, Macon, Ga., Trustee.

OWENS, District Judge:

James A. Firth, an individual doing business under the unregistered trade name of National Photocopy Equipment Company, on June 2, 1972, filed a bankruptcy petition under § 322 of the Bankruptcy Act, 11 U.S.C.A. § 722. Pursuant to § 376 of the Act, 11 U.S.C.A. § 776, he was adjudged a bankrupt on December 14, 1972. The First National Bank & Trust Company in Macon on January 31, 1973, as an alleged secured creditor, filed a reclamation petition seeking the return of certain items of personal property. Because the bank's security instruments including mainly but not limited to its Uniform Commercial Code financing statements and the Georgia motor vehicle certificate of title showed the name of the debtor and owner as National Photocopy Equipment Co., an unregistered trade name, and not as James A. Firth, the trustee contended that the bank's alleged security interests were not valid. The Referee's order sustained the trustee's contentions, and it is that order that is before this court for review. It poses two questions:

(a) Is a Uniform Commercial Code financing statement that shows the name of the debtor only in his unregistered trade name form legally sufficient to create a security interest?

(b) Is a valid security interest created by the issuance of a Georgia motor vehicle certificate of title which shows the name of the owner in his unregistered trade name form?

I. *The Financing Statements*

The financing statements filed by the bank are identical in every material aspect.[1] A form was employed for filing purposes, the upper left hand corner of which is entitled:

"1 Debtor(s) (Last Name First) and address(es)"

Each statement bears the name of the debtor as "National Photocopy Equipment Co." In the space provided for the

1. The descriptions of the collateral are, of course, dissimilar; moreover, the address of the debtor is not identical on each of the financing statements.

debtor's signature, each financing statement is executed as follows:

"National Photocopy Equipment Co.

"By: /s/ James A. Firth

"Signature(s) of Debtor(s)"

The name as shown is the unregistered trade name of Firth, who is the sole owner and operator of the business. The statements were filed with the Clerk, Superior Court, Bibb County, Georgia, prior to June 2, 1972, and naturally were indexed according to the unregistered trade name only.

Georgia Code Annotated § 109A–9—402, provides, *inter alia,* that:

"(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

. . ."

\* \* \* \* \* \*

"(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

In arguing that its financing statements met the formal requirements of Ga.Code Ann. § 109A–9—402(1), the bank relies

on several introductory provisions of the Uniform Commercial Code,[2] the Georgia statute on transactions conducted by firms doing business under unregistered trade names,[3] and National Cash Register Co. v. Sikes, 94 Ga.App. 391, 94 S.E. 2d 782 (1956), a pre-code case. Its reliance is misplaced.

■ Although there are no appellate decisions in Georgia concerning the use of an unregistered trade name on a financing statement, the precise issue has been properly decided elsewhere. In In re Leichter, 471 F.2d 785 (2d Cir. 1972), the bankrupt executed both a conditional sales contract and a financing statement under the registered trade name as follows:

"Landman Dry Cleaners

By: Matthew R. Leichter"

As in the case *sub judice,* the financing statement was indexed only under the bankrupt's assumed business name. The inquiry undertaken by the Second Circuit focused on whether a subsequent creditor of "Leichter" would be led to find the security interest filed and indexed under "Landman".[4] The court held that persons searching the records would not be put on notice by such a filing and thereby held it to be insufficient. A similar result was reached in In re Thomas, 466 F.2d 51 (9th Cir. 1972), where the correct name of the

2. The provisions referred to include:
Ga.Code Ann. § 109A–1—102 "Purposes; rules of construction; variation by agreement

"(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.

"(2) Underlying purposes and policies of this Act are

"(a) to simplify, clarify and modernize the law governing commercial transactions;

"(b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"(c) to make uniform the law among the various jurisdictions."

3. Ga.Code Ann. § 106–303 provides that:
". . . no contract or undertaking entered into by any person, firm, or corporation, whether heretofore or hereafter en-

tered into, shall be invalidated or declared illegal on the ground that the same was entered into in a trade or partnership name not filed or registered in accordance with the laws in force at the time such contract or undertaking was entered into; but all such contracts and undertakings are expressly validated as against any such objection; . . ."

4. 471 F.2d at 787. Compare In Re Excel Stores, Inc., 341 F.2d 961. (2d Cir. 1965), where the name "Excel Department Stores" was used instead of "Excel Store, Inc." The court held this to be a "minor error" within the meaning of Uniform Commercial Code § 9–402(5), noting that any creditor of Excel or other interested person would be put on notice of the filed and outstanding security interest.

debtor was Burris Haley Thomas, but the debtor's name was listed in the financing statement only as West Coast Avionics. The court held that "[i]t can hardly be said to be a 'minor error' when a potential creditor of Burris Haley Thomas searches the index under 'Thomas' and finds no notice of a security interest because that notice is filed under 'West Coast Avionics'." [5] Although the provisions of the Georgia version of the Uniform Commercial Code are to be liberally construed, the underlying purpose of the code's notice filing system would be frustrated by a holding that a financing statement filed and indexed only under the name "National Photocopy Equipment Co." gave notice to creditors of Firth. One searching the records under the name of the debtor, Firth, would simply not discover the security interest of the bank.

The case of National Cash Register Co. v. Sikes, *supra,* is of little aid to the bank, not only because it was decided prior to the effective date of the Georgia Uniform Commercial Code but also because the facts there are distinguishable from the instant case. The court there held that a title retention contract signed "Dixie Service Station by Allen Roth" did not import the name of any legal or artificial person, so it was obvious that the obligation was assumed by the person signing the instrument, i. e. by Roth. When a financing statement is signed "National Photocopy Equipment Co. by James A. Firth", however, the clear implication is that the individual party signs on behalf of the real debtor, National Photocopy Equipment Co. The signature does import the name of a legal or artificial person. Moreover, insofar as the formal requirements of Ga.Code Ann. § 109A–9—402(1) are concerned, the real debtor, Firth, has not signed in his individual

capacity but only on behalf of a fictitious business entity; the financial statement is therefore conceptually insufficient since the signature of the real debtor in his real name does not appear thereon.

■ The Georgia statute relating to the capacity of persons to contract under unregistered trade names is likewise unpersuasive, i. e. 1933 Ga.Code Ann. § 106–303. That statute, while it has the effect of binding those like Mr. Firth who contract in fictitious names to the contract so executed, does not have the effect of saying that financing statements given in fictitious names are sufficient to notify subsequent creditors of the identity of the party using the fictitious name. Were the court to hold otherwise, "the purpose of the statutory scheme of requiring security interest to be perfected by filing a financing statement—to give notice to future creditors of the debtor—would be seriously undermined." In re Thomas, *supra* 466 F.2d at 52.

Accordingly, that part of the referee's opinion and order which deals with Uniform Commercial Code financing statements is affirmed.

## II. *The Auto Certificate of Title*

■ The status of the bank's security interest in the motor vehicle requires a different approach since Ga.Code Ann. § 109A–9—302(3)(b), the Uniform Commercial Code, provides:

"(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

(b) of this State which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property."

5. This focus is consistent with the notice filing system contemplated under Article 9 of the Uniform Commercial Code, and the court indicates that the distinction drawn in the reported decisions is whether the name as it appears on the financing statement is only slightly different than the debtor's real name in which case parties searching the records would be placed on notice by such entry. 466 F.2d at 53, n. 3. *See also* Uniform Commercial Code § 9–402, Comment 2.

The Motor Vehicle Certificate of Title Act, Ga.Code Ann. § 68–401a et seq. (hereafter "Title Act"), is such a statute, and perfection of security interests must be accomplished pursuant to its provisions.[6]

The Title Act applies generally to all post 1963 model vehicles and requires that a certificate of title be applied for by the owner and issued by the Georgia State Revenue Commissioner. § 68–406a. The owner in applying is required to show his name, the description of the vehicle including particularly make, model and identifying number, date and from whom purchased, and names, addresses and rank of holders of security interests and liens.[7] Upon receipt of an application the Commissioner is required to check the vehicle identifying number against the required office records, and upon being satisfied of its genuineness is required to issue a certificate of title containing date of issuance, name of owner, names, addresses of security interest and lien holders; title number; and a description of the vehicle including in particular its make, model and identifying number.[8] Where

6. Ga.Code Ann. § 68–421a(a) and (b) provides:

"Perfection of security interest in and lien against a vehicle.—

"(a) The security interest in a vehicle of the type for which a certificate of title is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees and the holders of security interests and liens on the vehicle by compliance with the provisions of this Chapter.

"(b) A security interest is perfected by delivery to the commissioner of the existing certificate of title, if any, and an application for a certificate of title containing the name and address of the holder of a security interest, the date of his security interest and the required fee. It is perfected as of the time of its creation if the delivery is completed within 10 days thereafter; otherwise, as of the date of the delivery to the commissioner. When the security interest is perfected as provided in this subsection (b), it shall constitute notice to everybody of the security interest of the holder."

7. Ga.Code Ann. § 68–408a. "Application for first certificate of title.—

"(a) The application for the first certificate of title of a vehicle in this State shall be made by the owner to the commissioner on the form he prescribes. Said application shall contain:

(1) The name, residence and mail address of the owner;

(2) A description of the vehicle including, so far as the following data exists: its make, model, identifying number, type of body, the number of cylinders, and whether new or used;

(3) The date of purchase by applicant, the name and address of the person from whom the vehicle was acquired, and the names and addresses of the holders of all security interests and liens in order of their priority and the date thereof; and

(4) Any further information the commissioner reasonably requires to identify the vehicle and to enable him to determine whether the owner is entitled to a certificate of title and the existence or nonexistence of security interests in the vehicle and liens on the vehicle.

(b) If the application refers to a vehicle purchased from a dealer, it shall contain the name and address of the holder of any security interest created or reserved at the time of the sale by the dealer and the date of his security agreement and be signed by the dealer as well as the owner, and the dealer shall promptly mail or deliver the application to the commissioner.

(c) If the application refers to a vehicle last previously registered in another State or Country, the application shall contain or be accompanied by:

(1) Any certificate of title issued by the other State or Country;

(2) Any other information and documents the commissioner reasonably requires to establish the ownership of the vehicle and the existence or nonexistence of security interests in it and liens against it."

8. Ga.Code Ann. 68–411a. "Contents and effect.—(a) Each certificate of title issued by the commissioner shall contain:

(1) The date issued;

(2) The name and address of the owner;

(3) The names and addresses of the holders of any security interest and of any lien with, respectively, the type of security agreement and the date thereof and the type of lien and date thereof in the order of priority as shown on the application or, if the application is based on a certificate of title, as shown on the certificate;

(4) The title number assigned to the vehicle;

(5) A description of the vehicle including, so far as the following data exists: its make, model, identifying number, type of body, number of cylinders, whether new or

there are security interests the certificate of title is mailed or delivered by the Commissioner to the holder of the first security interest and the said holder may retain the certificate of title until the security interest is satisfied.[9] The

used, and, if a new vehicle, the date of the first sale of the vehicle for use ; and

(6) Any other data the commissioner prescribes.

(b) The certificate of title shall contain forms for assignment and warranty of title by the owner, and for assignment and warranty of title by a dealer, and may contain forms for applications for a certificate of title by a transferee, or naming of a security interest holder and of a lienholder and the assignment or release of the security interest and lien.

(c) A certificate of title issued by the commissioner is prima facie evidence of the facts appearing on it.

(d) A certificate of title for a vehicle is not subject to garnishment, attachment, execution, or other judicial process, but this subsection does not prevent a lawful levy upon the vehicle."

9. Ga.Code Ann. 68–412a. "Delivery.— (a) The certificate of title shall be mailed or delivered to the holder of the first security interest or lien named in it along with a nonnegotiable copy of such title certificate. In the event there is no security interest holder or lienholder named in such certificate, then the certificate of title shall be mailed or delivered directly to the owner.

(b) If the certificate of title is mailed to a security interest holder or lienholder, such person shall notify by mail all other lienholders or security interest holders that he has received the certificate of title. The notice shall inform the security interest holder or lienholder of the contents and information reflected on such certificate of title. Such mailing or delivery shall be within five days (exclusive of holidays) after the receipt of the certificate by the holder of any security interest or lien.

The holder of any such lien or security interest shall, within five days after the receipt of the certificate, mail the nonnegotiable copy of the title certificate to the owner.

(c) The security interest holder or lienholder may retain custody of the certificate of title until his claim has been satisfied. The security interest holder or lienholder having custody of a certificate of title must deliver the certificate of title to the next lienholder or security interest holder within 10 days after his lien or security interest has been satisfied, and if there is no other security interest holder or lienholder, he must deliver the certificate of title to the owner.

(d) Whenever the certificate of title is in the possession of a security interest holder or lienholder as allowed by this Chapter, and some other person, including the owner who has an interest in a transaction concerning a security interest or lien shown on the certificate of title, desires to have that transaction reflected on the certificate of title, he may execute under oath a notice of that transaction in the form prescribed by the commissioner setting forth the details of the transaction he desires to be reflected on the certificate of title. The notice, a fee of $1, and the title application shall be mailed by registered mail return receipt requested by the person desiring the change to the first security interest holder or lienholder having possession of the certificate of title. The notice shall contain on its face instructions to the security interest holder or lienholder having custody of the certificate of title directing him within 10 days to forward the notice, the fee, the title application and the certificate of title to the commissioner. The first security interest holder or lienholder having possession of the certificate of title shall comply with the instructions contained in the notice. The Commissioner upon receipt of such a notice, title application, together with the fee and certificate of title, shall enter the transaction shown on the notice on his records and on the certificate of title or issue a new certificate of title and shall then deliver the certificate of title as provided for in the Chapter. The person desiring the change shall retain the return registered mail receipt as proof of his compliance with this section. In the event the first security interest holder or lienholder holding the certificate of title fails, refuses or neglects to forward the title application, notice, fee and original certificate of title to the commissioner, as required herein, the person desiring the change may on a form prescribed by the commissioner make direct application to the commissioner. Such direct application to the commissioner shall have attached to it the return registered mail receipt showing the previous mailing of the title application, fee and notice to the first security interest holder or lienholder. Upon receipt of such a direct application, the commissioner shall order the first security interest holder or lienholder having custody of the certificate of title to forward the certificate of title to him for the purpose of having the subsequent transaction entered thereon or a new certificate of title issued. If, after a direct application to the commissioner and the order of the commissioner, the first security interest holder or lienholder continues to

Commissioner is required to maintain a record of all title certificates issued "(1) Under a distinctive title number assigned to the vehicle; (2) Under the identifying number of the vehicle; (3) Alphabetically, under the name of the owner; (4) Under the vehicle tag registration number . . . ." [10]

After the issuance of the certificate of title, subsequent creditors desiring to perfect security interest do so by delivering to the commissioner the existing certificate of title and an application to have the subsequent security interest shown thereon.[11] If it is alleged that a certificate of title is lost, application

fail, refuse, or neglect to forward the certificate of title as provided herein, the commissioner may cancel the outstanding certificate of title and issue a duplicate certificate of title reflecting all security interest and liens, including the subsequent security interest, and this duplicate certificate of title shall be delivered as provided for in this Chapter. Any first security interest holder or lienholder having possession of the certificate of title shall not have the validity of his security interest or lien affected by surrendering the certificate of title as provided by this section."

10. "Ga.Code Ann. § 68-410a. Issuance and records; admissibility in evidence.—

" . . . (b) The Commissioner shall maintain a record of all certificates of title issued by him:

"(1) Under a distinctive title number assigned to the vehicle;

"(2) Under the identifying number of the vehicle;

"(3) Alphabetically, under the name of the owner;

"(4) Under the vehicle tag registration number; and, in the discretion of the commissioner, in any other method he determines."

11. "Ga.Code Ann. § 68-421a(e) If the owner of a motor vehicle desires to place a second or subsequent security interest against the vehicle and the certificate of title on that vehicle is being held by a security interest holder or lien holder, the owner shall, on the form prescribed by the commissioner, execute under oath a title application and a notice of the second or subsequent security interest, and the holder of the security interest shall forward such notice and title application, together with a $1 filing fee, by registered mail return receipt requested, to the first holder of a security interest or lien who has custody of the certificate of title. The notice of such subsequent security interest shall contain on its face instructions to the security interest holder or lienholder having custody of the certificate of title directing him within 10 days to forward the notice, title application, and fee, together with the certificate of title, to the commissioner in order that the commissioner may issue a

new certificate of title and reflect on the certificate of title the subsequent security interest. The first security interest holder or lienholder having possession of the certificate of title shall comply with the instructions contained in the notice. The commissioner, upon receipt of a properly executed application notice, fee, and the original certificate of title, shall enter the subsequent security interest on his records and shall issue a new certificate of title and shall then deliver the certificate of title as provided for in this Chapter. If the holder of the subsequent security interest forwards by registered mail the title application, notice of the subsequent security interest, and fee to the first security interest holder or lienholder who has custody of the certificate of title within 10 days of the execution of that subsequent security interest, it shall be perfected as of the date it was executed; otherwise, as of the date the notice was forwarded to the first security interest holder or lienholder holding the certificate of title. The subsequent security interest holder shall retain the return registered mail receipt as proof of his perfection under this section. In the event the first security interest holder or lienholder holding the certificate of title fails, refuses or neglects to forward the title application notice, fee and original certificate of title to the commissioner as required herein, the holder of the subsequent security interest may, on a form prescribed by the commissioner, make direct application to the commissioner. Such direct application to the commissioner shall have attached to it the return registered mail receipt showing the previous mailing of the title application, fee and form to the first security interest holder or lienholder. Upon receipt of such a direct application the commissioner shall order the first security interest holder or lienholder having custody of the certificate of title to forward the certificate of title to him for the purpose of having the subsequent security interest entered and a new certificate of title issued. If after a direct application to the commissioner and the order of the commissioner the first security interest holder or lienholder continues to fail, refuse or neglect to forward the certificate of title as provided herein, the commissioner may can-

may be made for issuance of a duplicate and if issued it will be a duplicate.[12]

The source of the notice which the Title Act serves the purpose of giving, is one piece of paper—the certificate of title. That piece of paper, regardless of the manner in which the owner's name is shown thereon, discloses the presence or absence of existing security interests. If that paper is lost or unavailable, the records of the Commissioner's office contain the same information and it is indexed by owner's name and vehicle identification number, make and model. It is, therefore, apparent that the use of an unregistered trade name as the owner's name does not defeat a creditor's search for and the giving of notice to the world of the existence of the bank's security interest and does not therefore invalidate the bank's security interest. Unlike the indexing of a Uniform Commercial Code financing statement in the office of the Clerk of the Superior Court, the name of the owner of a motor vehicle is not the main point of reference.

Perfection of security interests under the Title Act as under the Uniform Commercial Code serves the purpose of giving notice to subsequent creditors. Perfection of security interests is particularly important in a bankruptcy context because it determines whether the secured party is subordinate to the rights of the trustee under 70c of the Bankruptcy Act.[13]

---

cel the outstanding certificate of title and issue duplicate certificate of title reflecting all security interests and liens, including the subsequent security interest, and this duplicate certificate of title shall be delivered as provided for in this Chapter. Any first security interest holder or lienholder having possession of the certificate of title shall not have the validity of his security interest or lien affected by surrendering the certificate of title as provided by this section. (Acts 1961, pp. 68, 83; 1962, pp. 79, 85; 1965, pp. 304, 311.)

12. "Ga.CodeAnn. § 68–414a. Lost, stolen or mutilated certificates.—If a certificate of title is lost, stolen, mutilated, or destroyed, or becomes illegible, the owner or legal representative of the owner named in the certificate, as shown by the records of the commissioner, shall promptly make application for and may obtain a duplicate upon furnishing information satisfactory to the commissioner. The duplicate shall be issued on the following terms and conditions:

"(a) Where the duplicate title is issued to the owner named in the lost, stolen, mutilated or destroyed certificate, as shown by the records of the Revenue Commissioner, the duplicate certificate of title shall contain the legend:

" 'This is a duplicate certificate and may be subject to the rights of a person under the original certificate.'

"(b) When the vehicle for which a duplicate certificate of title has been issued is transferred to a new owner, the commissioner shall not issue the transferred certificate of title to the transferee until 15 days after receipt of the application. The certificate of title issued to the transferee shall continue to contain the legend:

" 'This is a duplicate certificate and may be subject to the rights of a person under the original certificate.'

"After a duplicate certificate has been issued and the records of the commissioner show that the owner has held record title continuously for a period of not less than six calendar months and the record title of the owner has not been challenged, then the commissioner may, upon proper application by the owner, issue in his name a duplicate title, which shall simply contain the legend 'Duplicate Title.'

"(c) A person recovering an original certificate of title for which a duplicate has been issued shall promptly surrender the original certificate to the commissioner. Where the owner named in a duplicate certificate of title recovers the original certificate he may surrender the original certificate together with the duplicate title and if he is otherwise entitled to a certificate the commissioner may issue him a new certificate of title with no legend thereon. The commissioner shall not issue a new certificate of title under this section until 15 days after receipt of the application.

"(d) Where two or more innocent persons are the victims of the fraud or mistake of another and none of the victims could have reasonably taken steps to detect or prevent the fraud or mistake, the victim who first acquired an interest in a vehicle through any certificate of title shall have his interest protected."

13. The status conferred upon the trustee by 70c of the Bankruptcy Act is that of a lien creditor. Perfection is dispositive on the question of subordination of the security interest here because Ga.Code Ann. § 109A–9—301(1)(b) provides, *inter alia*, that:

An examination of the certificate of title in the instant case reveals that the certificate was issued in the trade name of the bankrupt on July 19, 1972, which is later in time than the filing of the petition in bankruptcy. While the certificate evidences the existence of the bank's security interest, it does not reveal when the bank applied to the commissioner for a certificate of title evidencing its security interest and thus when its security interest was perfected.[14] The decision of the referee, which focused only on whether the National Photocopy Equipment Company could be an "owner" under the Title Act, is reversed and the case is remanded for a determination of when the bank's security interest was perfected.

If the evidence reveals that the security interest was perfected prior to filing of the petition in bankruptcy, the bank's reclamation petition should be granted; if not, it should be denied.

For the foregoing reasons, the decision of the Referee is affirmed in part and reversed and remanded in part.

Martin J. Moran, Pittsburgh, Pa., for plaintiff.

J. F. Nakamura, Washington, D. C., for defendant.

". . . an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor without knowl-edge of the security interests and before it is perfected."

14. See note 6, *supra.*