**Greg Restaurant Equipment & Supplies, Inc. v. Richard M. Valway, Diane M. Valway and Burlington Savings Bank**

[472 A.2d 1241]

No. 82-514

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed January 13, 1984

60

*Desautels & Bergeron, Inc.,* Burlington, for Plaintiff-Appellee.

*Gear and Davis, Inc.,* Burlington, for Defendant-Appellant Burlington Savings Bank.

**Peck, J.** The Burlington Savings Bank (Bank) appeals from a summary judgment granted by the Chittenden Superior Court giving Greg Restaurant Equipment & Supplies, Inc. (Greg) priority over collateral claimed by both parties.

On appeal, the Bank contends that Greg's purchase money security interest (PMSI) was invalid because the financing statement was filed initially under the debtor's trade name alone rather than his actual name. The Bank alternatively claims that it had perfected a PMSI prior in time to that claimed by Greg. Because we agree with the Bank's first contention, we do not reach the second. Accordingly, we reverse.

On June 9, 1981, Richard M. Valway, doing business as Ricardo's, a restaurant located in Winooski, Vermont, received a binding loan commitment from the Bank for $90,000. The Bank then disbursed $20,000 of the loan proceeds to Valway and Greg as joint payees. The ostensible purpose of the loan was to help finance the purchase of certain restaurant equipment by Valway from Greg. Pursuant to a security agreement signed by Valway and the Bank, the latter filed financing statements to perfect its security interest in "all equipment and machinery . . . now owned or hereafter acquired" as col-

lateral for the loan. The filings occurred on June 8, 1981, in the Winooski City Clerk's office, and on June 10, 1981, with the Secretary of State's Office, in compliance with 9A V.S.A. § 9—401 (1) (c). The financing statements described the debtor as "Richard M. Valway d/b/a Ricardo's."

To augment the Bank financing, Valway executed a promissory note to Greg in the amount of $42,671.38 on August 19, 1981. The note was secured by a security agreement listing the restaurant equipment purchased from Greg as collateral. Greg filed its financing statement in the appropriate offices on August 21, 1981. However, this statement listed the debtor simply as "Ricardo's." No mention of Valway was made until the financing statement was amended on February 19, 1982, some six months after the equipment described was delivered to Valway. After being put on notice of Greg's interest, the Bank made no further disbursements.

Valway subsequently defaulted on the note to Greg, prompting Greg to file an action to replevy the restaurant equipment to satisfy the remaining debt. The Bank opposed the issuance of a writ of replevin because of its security interest in the same equipment.

On June 4, 1982, the parties stipulated that the equipment might be sold by Greg, 9A V.S.A. § 9—504, and the proceeds held in escrow pending a determination of priority over the collateral as between the United States Small Business Administration (S.B.A.) and Greg.[1] The S.B.A. moved for summary judgment. However, the court determined that Greg had priority and entered summary judgment accordingly.

Notwithstanding the manner in which Greg first filed its financing statement, the court ruled that Greg had perfected a valid PMSI, entitling it to priority over the Bank's general security interest.[2] It is implicit in the court's ruling that it be-

[1] The Small Business Administration had guaranteed ninety per cent of Valway's loan. It entered as defendant at this point because it had been assigned the Bank's interest in the loan pursuant to the guaranty. After filing the notice of appeal, the S.B.A. indicated it would deny liability on the guaranty and proceed no further. The Bank then resumed its position as defendant and prosecuted the appeal.

[2] Because of the parties' stipulation to the facts on the motion for summary judgment, there was no dispute that the Bank had, at the very least, a general secured interest in the equipment under its after-acquired property clause.

lieved the Bank's security interest did not rise to the level of a PMSI. If it did, the Bank's priority would be elevated above that of Greg because it was perfected by filing first. 9A V.S.A. § 9—312(5)(a). That issue is irrelevant to this decision, however, since we believe that the court erred as a matter of law in holding that Greg had perfected a valid PMSI.

The purchase money security interest is the preferred device for protecting a creditor against default by its debtor. Under the Vermont Uniform Commercial Code, a PMSI in collateral other than inventory gives its holder priority over conflicting security interests under certain conditions. 9A V.S.A. § 9—312(4). One reason for this special status is to encourage the infusion of new capital into a business when existing creditors are reluctant to advance more funds. J. White & R. Summers, Uniform Commercial Code § 25-5 (2d ed. 1980). To effectuate this purpose, the Code gives the PMSI priority even over pre-existing security interests in after-acquired property, regardless of notice. 9A V.S.A. § 9—312 comment 3.

The priority that PMSI holders enjoy, however, is not given lightly. On the facts of this case, Greg must show that its security interest was taken or retained to secure all or part of the price of the equipment. 9A V.S.A. § 9—107(a). The Code generally requires that creditors file a financing statement to perfect their security interests. 9A V.S.A. § 9—302(1). This rule is subject to the exceptions contained in § 9—302(1)(d) for consumer goods, § 9—304(1) for collateral subject to temporary automatic perfection, and § 9—305 for security interests perfected by possession. Because none of these exceptions were applicable in the present case, Greg must show further that it properly filed a financing statement within ten days after Valway received possession of the equipment. 9A V.S.A. § 9—312(4). There is no dispute that Greg meets the requirements for *attachment* of a purchase money security interest under 9A V.S.A. § 9—107(a). The only question here is a narrow one: whether Greg's use of Valway's trade name "Ricardo's" rather than Valway's own name as debtor in the financing statement was sufficient to *perfect* the interest that had attached.

Greg advances two reasons why its filing was proper. First, Greg contends that because the Bank knew about Greg's security interest, the error was not seriously misleading and,

therefore, the statement was effective under 9A V.S.A. § 9—402(5). Second, Greg argues that the Bank was not a subsequent creditor, and therefore not prejudiced by the error regardless of how misleading it was.

The lower court apparently agreed with Greg's arguments, as is evidenced in the following language:

> In this case, the SBA is technically correct that the security interest in dispute was not perfected because the debtor's trade name is dissimilar to the debtor's name. However, there is merit to the plaintiff's contention that [Bank] (in whose "shoes the SBA stands") was not prejudiced by the error. The [Bank] is a prior creditor to plaintiff and was on actual notice of plaintiff's claimed pmsi in the restaurant equipment. The accident in naming the debtor by plaintiff is a mere fortuitous event as far as the [Bank] (SBA) is concerned. To give the SBA the relief it now claims would elevate inequitably form over substance under the facts of this case.

The flaw in the court's reasoning is that notice to the Bank of Greg's attempt to create a PMSI and the Bank's status as a prior creditor are inconsequential. Unless the security interest falls under one of the exceptions to the general requirement of filing, 9A V.S.A. § 9—302, the creditor aspiring to perfect a PMSI must file a financing statement properly. Knowledge of a third party is not a substitute for compliance with the Code's filing requirement, and will not serve to salvage an otherwise unperfected security interest. To hold otherwise would be to reword 9A V.S.A. § 9—301(1)(a) to read: (1) . . . an unperfected security interest is subordinate to the rights of (a) persons entitled to priority under section 9—312; *unless those persons had knowledge of the unperfected security interest. In re E. A. Fretz Co.,* 565 F.2d 366, 371 (5th Cir. 1978). Such an exception to the filing requirement does not appear in the statute.

The Code instead manifests a strict policy of relying solely upon proper filing to settle questions of perfection. The vagaries of determining factual issues of knowledge are thus avoided. For example, as between two conflicting security interests of equal status, 9A V.S.A. § 9—312(5)(a) directs that

the first interest to be perfected by proper filing will achieve priority. That section operates in favor of the first to file properly, regardless of a party's knowledge of prior security interests in the same collateral. J. White & R. Summers, Uniform Commercial Code, *supra*, § 25-4, at 1037.

■ Because the purchase money priority is an exception to the Code's first-to-file rule, it should be allowed only when the creditor has shown compliance with the rules for perfection. *North Platte State Bank* v. *Production Credit Association*, 189 Neb. 44, 54, 200 N.W.2d 1, 7 (1972). This approach is virtually required by 9A V.S.A. § 9—303(1), which provides: "A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in [section] 9—302 . . . ."

Having determined that proper filing was required to perfect Greg's PMSI, regardless of the Bank's knowledge, we now turn to whether the filing made by Greg was adequate.

■■ A financing statement that complies substantially with 9A V.S.A. § 9—402 may be "effective even though it contains minor errors which are not seriously misleading." 9A V.S.A. § 9—402(5). The formal requisites of a financing statement are found in 9A V.S.A. § 9—402, which provides in subsection (1):

> A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. . . .

Although no specific mention is made of the debtor's name in § 9—402(1), it is no less a vital part of the filing procedure. In Vermont, financing statements are indexed by the debtor's name, 9A V.S.A. § 9—403(4), so that they may enable creditors to determine whether certain collateral is encumbered by pre-existing secured interests. The name under which a financing statement is filed is therefore essential to the "notice filing" system adopted in this state. See 9A V.S.A. § 9—402 comment

2. Failure to file under the correct name would make it impossible to find a financing statement. Although business creditors may be aware of a debtor's trade name in many instances, private creditors may not. This lack of notice to the public could result in the creation of a secret lien, contrary to the policy of the Code, see generally Note, *The Effect of Errors and Changes in the Debtor's Name on Article Nine Security Interests*, 1975 Duke L.J. 148 (1975), as well as to extended factual disputes on the issue of knowledge.

The 1962 version of the proposed Uniform Commercial Code, which was enacted by Vermont, and is still the law of this state, does not speak to the issue of trade name versus debtor name filing. Changes incorporated in the 1972 draft of the proposed code, however, address the problem specifically. Though not yet the statutory law in Vermont, these improvements are instructive as to the drafter's intent with regard to the filing system generally. Section 9—402(1) of this 1972 version expressly requires the use of the debtor's name on the financing statement. Section 9—402(7) of the new draft provides in part: "A financing statement sufficiently shows the name of the debtor if it gives the individual partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners." Comment 7 of § 9—402 explains that:

> Subsection (7) undertakes to deal with some of the problems as to who is the debtor. In the case of individuals, it contemplates filing only in the individual name, not in the trade name . . . . Trade names are deemed to be too uncertain and too unlikely not to be known to the secured party or persons searching the record, to form the basis for a filing system.

 The Washington Court of Appeals in applying that state's § 9—402, also derived from the 1962 draft, came to the result established by the 1972 code in *Hobart Corp. v. North Central Credit Services, Inc.*, 29 Wash. App. 302, 305, 628 P.2d 842, 845 (1981). Citing various federal court decisions, including *In re Leichter*, 471 F.2d 785, 786–87 (2d Cir. 1972); *In re Fowler*, 407 F. Supp. 799, 802 (W.D. Okla. 1975); *In re Firth*, 363 F. Supp. 369, 371–72 (M.D. Ga. 1973), the court held that the only acceptable method of filing is under the

debtor's name where he is doing business as an unincorporated proprietorship under a different name. *Hobart, supra,* 29 Wash. App. at 306, 628 P.2d at 845. We concur in this conclusion, and we so hold. The extra burden that trade name filing would put on creditors searching the record is contrary to the implied policy of the Code, which contemplates that those wishing to perfect a security interest bear the burden of proper filing. *Citizens Bank v. Ansley,* 467 F. Supp. 51, 55 (M.D. Ga. 1979).

■ For these reasons we conclude that filing under the trade name "Ricardo's," since it is materially different from the name Valway, was seriously misleading, not a minor error, and therefore ineffective to perfect Greg's claimed PMSI.

■ We note that in a subsequent amendment to its original filing, Greg filed under the name Richard M. Valway d/b/a Ricardo's. This amendment, however, was not filed within the ten-day grace period provided in 9A V.S.A. § 9—312(4). Although amendments adding new collateral do relate back to the original financing statement as to the new collateral, 9A V.S.A. § 9—402(4), they do not serve to validate improper filings retroactively. At best, Greg had only a general security interest as of the date the amendment was filed. As between Greg's security interest and that claimed by the Bank in Valway's after-acquired property, the Bank has priority because it filed first. 9A V.S.A. § 9—312(5)(a).

*Reversed and remanded.*