In re **GREENBELT COOPERATIVE, INC.,** Debtor.

**GREENBELT COOPERATIVE, INC., Plaintiff,**

v.

**WERRES CORPORATION and Raymond Leasing Corporation, Defendants.**

**Bankruptcy No. 88–5–3199–SD. Adv. No. A89–0186–SD.**

United States Bankruptcy Court, D. Maryland.

Feb. 12, 1991.

James A. Vidmar, Jr., Silver Spring, Md., Lawrence D. Coppel, and Jonathan N. Portner, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for debtor.

Lawrence F. Regan, Jr., Garza and Regan, P.A., Rockville, Md., for defendants.

## MEMORANDUM OF DECISION

E. STEPHEN DERBY, Bankruptcy Judge.

The issues raised by this adversary proceeding involve the effect on perfection of a security interest in equipment, vis a vis the debtor-in-possession, of a UCC financing statement filed under a trade name of the debtor.

The Debtor, Greenbelt Cooperative, Inc., has filed a complaint under 11 U.S.C. § 544(a) to avoid a lien of defendant Raymond Leasing Corporation ("Raymond") in certain equipment, and proceeds thereof. Debtor contends the lien was not perfected prepetition and is therefore void against Debtor, as representative of its bankruptcy estate. Raymond offers several defenses in the alternative:

First, the filing of a UCC financing statement under a principal trade name of the Debtor can operate to perfect a security interest under Maryland law;

Second, the Debtor's actual knowledge of the security interest is imputed to the debtor-in-possession and defeats Debtor's avoidance power under 11 U.S.C. § 544(a);

Third, since Debtor's reorganization plan has been confirmed, avoidance of Raymond's security interest would create a windfall for Debtor and would not benefit creditors. Therefore, Raymond's security interest should be enforced as between Raymond and Debtor; and

Fourth, reservation of title in the lease agreement with Debtor was sufficient to establish an enforceable security interest.

### I.

### *Findings of Fact*

At all times in 1987 and 1988 prior to filing its petition initiating this case, Debtor was a consumer owned cooperative engaged in the retail furniture business with 15 stores and 3 warehouses. It engaged in business under the trade name of SCAN, and it was well known among consumers by the name SCAN. Debtor's written promotional material identified it as SCAN, a division of Greenbelt Cooperative, Inc. Its order forms, stationery, and business cards, as well as the name on its headquarters building in Savage, Maryland, carried similar dual identification. Checks used to pay vendors carried the name Greenbelt Cooperative, Inc., and the telephones were answered by operators who recited Greenbelt Cooperative. Debtor's annual report for 1987 identified it as Greenbelt Cooperative, Inc. and contained text references to SCAN's activities. This report was circulated to all 115,000 of Debtor's members and any vendors who requested it.

Under date of May 4, 1987, Debtor executed a contract denominated an equipment lease with defendant Werres Corporation ("Werres"). At the conclusion of the lease term, Debtor could purchase the equipment, which consisted of forklifts, racking and related items, for $1.00. The court has previously granted partial summary judgment for Debtor that this contract was intended as a security agreement for the purchase price, and it was not a true lease. On July 6, 1987 a financing statement was filed with the proper office, namely, the Maryland State Department of Assessments and Taxation, in favor of Werres as secured party and Raymond as assignee. Werres has duly assigned the contract to Raymond, and in fact originally entered into the agreement for Raymond and with Raymond's approval.

The contract forwarded to Debtor by Werres for execution identified the lessee on the heading and signature line as Scan Furniture. Likewise, on the financing statement Scan Furniture was listed as the debtor. When the signature lines on an addendum to the lease and on the financing statement were completed, it appears someone at Debtor's offices typed in SCAN Furniture, Inc., since the type face is different and these portions had not been completed when the documents were forwarded to Debtor for signature.

Apparently, Raymond and then Werres became concerned about what entity was responsible for the debt. Raymond's credit department reported internally that it had no financial information other than sales

figures on Scan Furniture, and thus it would require individual financials on Scan Furniture or a guarantee from Greenbelt Cooperative, which it described as the parent company. At the request of Werres, by letter dated June 16, 1987, Debtor confirmed to Werres "that Greenbelt Cooperative, Inc. is responsible for the obligations of Scan Furniture as related to the Raymond Leasing Agreement". Thereafter, the financing statement was filed listing Scan Furniture as the debtor, and there was never an additional filing which in any way identified Greenbelt Cooperative, Inc. as the debtor.

Two gentlemen with extensive experience in equipment leasing, William Single, Esquire, for Debtor and George L. Beck, for defendants, were in substantial agreement. Each testified that his practice in searching liens was to obtain a debtor/lessee's legal name and to check both the legal name and known trade names. Mr. Single testified further that his practice was to file financing statements under both the legal and trade names of a lessee. Werres and Raymond knew an entity known as Greenbelt Cooperative, Inc. was involved in the subject transaction and that Scan Furniture was lacking financials. The court concludes that a careful lessor would have inquired as to the legal name of the entity with which it was dealing and would have filed a financing statement in that name. Defendants did not exercise the degree of care in documenting this transaction which is recommended by experienced equipment lessors.

As between the parties, Greenbelt Cooperative, Inc. knew it had by agreement pledged the equipment to secure payment of a debt to Raymond. There were no intervening claimants prepetition, and Raymond could have enforced its security interest in the equipment as against a claim of Greenbelt Cooperative, Inc. prior to the filing of the petition instituting this case. The questions raised here involve the effect of the bankruptcy filing on Raymond's security interest, which was perfected in the name of Scan Furniture and not in the name of Greenbelt Cooperative, Inc., the legal entity.

The Debtor filed this case on November 4, 1988. After filing Debtor and Raymond agreed to sell the equipment at public auction and to hold the proceeds in escrow. The sale was on February 22, 1989. Thereafter, on June 2, 1989 Debtor filed this complaint under 11 U.S.C. § 544(a) seeking a determination, *inter alia,* that the recorded financing statement in a trade name was not sufficient to create a perfected lien or security interest in the equipment as against the debtor-in-possession, as trustee of the bankruptcy estate. On November 20, 1989 Debtor's Second Amended Joint Plan, as interlineated, which had been filed on September 26, 1989, was confirmed.

## II.

### *Conclusions of Law*

#### A.

Greenbelt Cooperative, Inc. argues that a financing statement filed under the trade name of a debtor, as opposed to its legal name, can never be sufficient to perfect a security interest under Maryland law. Such a conclusion would amount to a *per se* rule, and it is not accepted by this court as an accurate statement of the rule which Maryland courts would apply. This court envisions limited situations in which the filing of a financing statement under the trade name of a debtor may perfect the security interest of a creditor. These occasions, however, would be limited to situations where the legal name of a debtor and the trade or other name under which the financing statement is filed are sufficiently similar that a subsequent creditor searching with reference to the debtor's legal name would find the financing statement or information which would put the creditor on notice that a more thorough search should be conducted.

The provision of the Uniform Commercial Code which describes financing statements is ambiguous and left to the courts to construe. Maryland Commercial Law Code Ann. § 9–402 (1990 Cum.Supp.), which recites the formal requisites of a financing statement and was in effect at all times applicable, states in part:

(1) A financing statement is *sufficient if it gives the names of the debtor and the secured party*, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

\*    \*    \*    \*    \*    \*

(8) A financing statement *substantially complying* with the requirements of this section is effective even though it contains minor errors which are not seriously misleading. (Emphasis supplied.)

Section 9–401(1) says explicitly only what is sufficient, and not what is necessary, to perfect a security interest. *See, e.g.,* Note, *Trade Name Filing: Should It Be Sufficient to Perfect A Security Interest Under U.C.C. Section 9–402?*, 35 Case W.Res.L. Rev. 51 (1984). This court is not aware of reported Maryland cases which have addressed the specific issue presented here.

In construing the statute, the court should be sensitive to its intended purpose and administration. The purpose of the statute is to give notice to third parties of a security interest held by a creditor in the assets of a particular debtor. Official Comment No. 2, Md.Com.Law Code Ann. § 9–402 (1975); *Plemens v. Didde–Glaser*, 244 Md. 556, 563, 224 A.2d 464 (1966). If a filing fails of this purpose, then it should not be effective. However, if a filing under a trade name actually would put a creditor on notice of a security interest in the assets of the debtor, then that filing, having fulfilled its purpose under the statute, may be effective. Thus, courts have held that a filing under a trade name, if sufficient to put a reasonably diligent creditor on notice of a security interest, may be effective, although it otherwise would not be. For example, in the case of *In re Platt*, 257 F.Supp. 478 (E.D.Pa.1966), the legal name was the personal name of the debtor, Henry Platt. Mr. Platt used two trade names, Platt Fur Co. and Kenwell Fur Novelty Co. *Id.* at 482. The court distinguished between the two trade names, noting that:

The use of Kenwell as the debtor would clearly have left F.C.A. without a perfected security interest. However, the name Platt Fur Co. is sufficiently related to the name of the debtor, Henry Platt, to require those who search the records to make further investigation. Furthermore, the Referee found that the name was "not seriously misleading," the criterion for effectiveness under § 9–402(5).

*Id.*

■ Maryland's version of the Uniform Commercial Code is consistent when it incorporates a substantial compliance test for financing statements. Md.Com.Law Code Ann. § 9–402(8), quoted above. Thus, where a filing is not misleading, it may be effective to perfect a security interest. *Cf., Plemens*, 244 Md. at 566, 224 A.2d 464 (where Maryland's Court of Appeals, in rejecting the challenge of a trustee for the benefit of creditors to a financing statement claiming the signature was ineffective, stated: "There is nothing in the evidence to indicate that any one searching the records would be misled by the fact that the signature did not relate to the representative capacity of Mr. Slatkoff.")

While there is authority that where a business has been conducted in a community consistently under a trade name for an extended period, a financing statement filed under that trade name is sufficient to perfect a security interest, *see In re McBee*, 714 F.2d 1316 (5th Cir.1983), the weight of authority is that a financing statement must be filed under the legal name of the debtor to be sufficient, unless the names are so close that a filing under the trade name of the debtor is a minor error. *See In re Leichter*, 471 F.2d 785 (2nd Cir.1972) (where the court held that, since Leichter and not Landman was the legal debtor, omitting to file under Leichter was not simply a minor error within § 9–402(5)); and *In re Hill*, 363 F.Supp. 1205 (N.D.Miss.1973) (holding that although a store had been doing business under the same trade name in the same location for two years prior to bankruptcy, a financing statement which was filed only

under the debtor's trade name rendered the creditor's claim unenforceable against the trustee).

Raymond urges the court to follow *Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir. 1981). The standard adopted by the court in *Glasco* was "... whether potential creditors would have been misled as a result of the name the debtor was listed by in the bank's financing statement." *Id.* at 796. However, the court imposed a further requirement that potential creditors also be reasonably prudent. In *Glasco*, the court held that where a debtor held itself out to creditors as "Elite Boats, Division of Glasco, Inc." reasonably prudent creditors would be required to search under the trade name, "Elite Boats" in addition to its legal name, "Glasco, Inc." *Id.*

A rule such as that articulated by the Fifth Circuit in *Glasco*, and followed in *McBee*, would introduce uncertainty into commercial transactions. A secured creditor, to be assured of protection for its security interest priority, would be at risk to identify and search under all trade names by which a corporate entity might be known. This is a particularly onerous and unrealistic for nonlocal financial institutions, such as Raymond in this case, which are not familiar with the conduct of local businesses.

Considering ease of administration of the statute, it would appear much more efficient and certain to require all concerned parties to operate with reference to the legal name of the debtor. If a creditor is allowed to file the financing statement under a trade name of the debtor, then each subsequent creditor will need to determine and check under both the trade name, perhaps more than one, and the legal name of a debtor. It would be more straight forward for the original creditor and each subsequent creditor to determine the legal name of the debtor and file and search under that one name.

This court concludes a Maryland court would apply a rule which requires, for it to be effective, that a financing statement be filed either under the legal name of the debtor or under a name which is substantially similar to the legal name of the debtor, so that it would not mislead a reasonably diligent creditor searching the financing records. A creditor should only be required to search under the legal name of a debtor to obtain notice of a security interest or to be put on notice to inquire further. Such a rule follows the weight of authority, it makes commercial sense, it promotes uniformity, and it is sufficiently flexible to accommodate minor errors and oversights which are not misleading.

The conclusion here is consistent with dictum of the Court of Appeals for the Fourth Circuit in the recent case of *In re Bumper Sales, Inc.*, 907 F.2d 1430 (4th Cir.1990) where the court held under Virginia law that the secured creditor's use of its trade name on the financing statement was not seriously misleading. *Id.* at 1435. After quoting from Sections 9–402(1) and 9–402(8) of Virginia's Uniform Commercial Code, which are worded identically to the comparable Maryland sections quoted above, in considering the name used by the secured party the court explained:

> The issue is "whether or not 'a reasonably diligent searcher' would be misled by the irregularity." *In re Bosson*, 432 F.Supp. 1013, 1017 (D.Conn.1977) (quoting J. White & R. Summers, *Handbook of the Law Under The Uniform Commercial Code* 839 (1972)). This is determined on a case by case basis. The rationale for this minimal threshold is that the financing statement is designed to "indicate[ ] merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." Official Comment # 2, Va.Code § 8.9–402. *See also In re Varney Wood Prods., Inc.*, 458 F.2d 435 (4th Cir.1972); *Hixon v. Credit Alliance Corp.*, 235 Va. 466, 369 S.E.2d 169 (1988).
>
> Some courts have found that the use of the debtor's trade name on the financing statement is "seriously misleading" and not "minor error." *See, e.g., Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir.1987); *In*

re Thomas, 466 F.2d 51 (9th Cir.1972); and Greg Restaurant Equipment & Supplies, Inc. v. Valway, 144 Vt. 59, 472 A.2d 1241 (1984). However, others have upheld the use of a debtor's trade name. See, e.g., In re Glasco, Inc., 642 F.2d 793 (5th Cir.1981). The court's concern is understandable, because a prospective creditor checking to see if a financing statement has been filed may look only under the debtor's real name, not the debtor's trade name, and thereby miss the filing altogether. However, the use of the secured party's (as opposed to the debtor's) trade name is much less troubling, in part because the financing statement still gives notice that the debtor's assets may be encumbered and that further inquiry is warranted.

Id. at 1434–1435. (Emphasis supplied.)

■ Although courts, under Maryland law, may on some occasions accept a filing under a variation on a debtor's legal name which would put a reasonably diligent creditor on inquiry notice of a possible security interest, a filing under SCAN would not be found by those looking for security interests in the assets of Greenbelt Cooperative, Inc. Consequently, Raymond's financing statement was not sufficient to perfect its security interest in Debtor's assets against the claims of others.

### B.

■ The Debtor's actual knowledge of Raymond's security interest is not imputed to the debtor-in-possession and does not defeat the avoidance power of Greenbelt Cooperative, Inc., as debtor-in-possession, under 11 U.S.C. § 544(a)(1). The contrary position asserted by Raymond is squarely in conflict with the language of Section 544(a):

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; .... (Emphasis supplied.)

Pursuant to 11 U.S.C. § 1107(a), the debtor-in-possession has all the rights and powers, and shall perform all the functions and duties of a trustee, with certain exceptions not material here.

Section 544(a) is often referred to as the strong arm clause. The reason for this term is that the trustee in bankruptcy stands in the shoes of a hypothetical judicial lien creditor.

The reason for the trustee's enhanced position is due to the trustee's unique position as the caretaker of the estate and the trustee's responsibility to preserve the estate's assets for the benefit of all creditors. See In re Ozark Restaurant Equipment Co., Inc., 816 F.2d 1222 (8th Cir.1987), cert. denied sub nom. Jacoway v. Anderson, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). The trustee is thus given the power and ability to avoid all unperfected security interests. The trustee is an entity distinct from the debtor, even where the debtor, as debtor-in-possession, is acting as trustee and the debtor had actual knowledge of an unperfected security interest. If a case concludes unsuccessfully with a dismissal, so that the avoidance of a transfer is no longer beneficial to creditors, but only to the debtor, a transfer avoided under Section 544(a) is reinstated. 11 U.S.C. § 349(b)(1)(B). This prevents a windfall for a debtor outside a bankruptcy case.

Raymond's reliance on In re Hartman Paving, Inc., 745 F.2d 307 (4th Cir.1984) (Winter, C.J., dissenting) is misplaced because the issues in Hartman involved: (1) avoidance powers of a bona fide purchaser under Section 544(a)(3); and (2) intricacies of West Virginia real property conveyance law. See In re Millerburg, 61 B.R. 125,

127–28 (Bankr.E.D.N.C.1986). *Contra Hartman Paving, see In re Probasco*, 839 F.2d 1352, 1354–55 n. 2 (9th Cir.1988). This adversary proceeding was brought pursuant to Section 544(a)(1), and it concerns the status of a hypothetical judicial lien creditor on the petition date. Under Maryland law a judicial lien creditor would have priority over an unperfected security interest in personal property, and knowledge is not a factor. Md.Com.Law Code Ann. § 9–301(1)(b) (1990 Cum.Supp.). Compare Md.Com.Law Code Ann. § 9–301(1)(b) (1975), before it was amended by Md.Laws 1980, Ch. 824 to delete the phrase "without knowledge of the security interest."

### C.

■ Raymond's third argument is that the trustee's power of avoidance may not be used by a debtor-in-possession under 11 U.S.C. § 1107(a) to glean a windfall for the debtor, but it should only be used in furtherance of equitable distribution of the debtor's assets among creditors. A leading case supporting this proposition is *Matter of Vintero Corp.*, 735 F.2d 740 (2nd Cir. 1984), *cert. denied* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984), which involved a filing lapse under Maryland law of a creditor's security interest in a ship.

In *Vintero*, the court began with the premise that a debtor-in-possession under the former Bankruptcy Act was given the right of an ideal judicial lien creditor to avoid an unperfected security interest. *Id.* at 741–42. However, the purpose of this power was to benefit third party creditors, not to create a windfall for the debtor itself. *Id.* at 742. The Second Circuit held that a *nonrecourse* secured creditor's failure to file a financing statement in Maryland, after the debtor, Vintero, moved a ship in which the creditor had a security interest to Maryland, did not preclude the creditor from making a claim in the estate of the Chapter XI debtor. Although "[w]hen Vintero assumed the status of a debtor-in-possession, it became vested with the rights and powers of a trustee," and "had all the rights that an ideal judicial lien creditor would have as of the filing of Vintero's petition," Vintero was not itself an ideal judicial lien creditor, although it could exercise the rights of one. 735 F.2d at 741–742. The court reasoned that "[f]iling requirements are for the benefit of third parties, not the debtor. U.C.C. § 9–301." *Id.* at 742.

The court continued, quoting Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* Paragraph 3.2[2], at 3–8 (1980): " 'The security interest need not be perfected to be enforceable against the debtor; perfection is important only insofar as adverse third parties have entered the picture.' " *Id.* at 742. The analysis of the court is set forth below:

> Vintero was given the right to avoid CVF's security interest in order to protect such third parties, not to create a windfall for Vintero itself. *See Whiteford Plastics Co. v. Chase Nat'l Bank*, 179 F.2d 582, 584 (2d. Cir.1950). Vintero suffered no prejudice because of the lapse in filing, and we see no reason why it should benefit from such lapse. *See In re Fried Furniture Corp.*, 293 F.Supp. 92, 93 (E.D.N.Y.1968), *aff'd*, 407 F.2d 360 (2d. Cir.1969) (per curiam). To the extent that other creditors of Vintero are not affected adversely by enforcement of CVF's security interest, there is no reason why such interest should not be enforced. *Whiteford Plastics Co. v. Chase Nat'l Bank, supra*, 179 F.2d at 584.

> \*   \*   \*   .\*   \*   \*

> A bankruptcy court has broad equitable powers which may be invoked to see "that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."

*Id.* If the lien was avoided, the claim against Vintero would have been extinguished in its entirety because of its nonrecourse nature. Therefore, while Vintero could assert the rights of an ideal judicial lien creditor to prevent the secured creditor from obtaining priority of payment over other, unsecured creditors, the unperfected secured creditor was entitled to share pro rata with them and the creditor's claim was

recognized to "... preclude the possibility of Vintero reaping an undeserved windfall." *Id.* at 743.

While the equitable principles enunciated in *Vintero* have not been altered by the Bankruptcy Code, the court does not find them applicable in this case. The controlling standard is not, as Raymond contends, whether the avoidance of Raymond's lien either will result in a greater promised payment to other creditors or is necessary to make promised plan payments. Rather, the controlling standard is whether there will be some benefit to creditors from the avoidance. The latter standard has been satisfied here.

This is a case under Chapter 11, where the acknowledged purpose is a successful reorganization. As stated in the House Report for the Bankruptcy Reform Act of 1978:

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap. Often, the return on assets that a business can produce is inadequate to compensate those who have invested in the business. Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders, to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess., Ch. 5, Pt. I at 220. (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6179. Debtor's plan requires deferred payments to certain classes of creditors. It also provided substantial cash payments to creditors on its effective date. A recovery by Debtor in this proceeding will improve Debtor's financial health to the extent of the recovery. It will thereby increase the likelihood that Debtor's reorganization will be successful and that Debtor will be able to make its deferred plan payments.

Further, the possibility of recovery in this proceeding was a factor available to creditors in negotiating or eliciting more favorable plan terms than Debtor might otherwise have proposed. There was an active committee of creditors, and Debtor's complaint was filed before the confirmation hearing. The postpetition timing of the hearing and decision in this case should not affect the merits of Debtor's avoidance claim. It is benefit to Debtor's successful reorganization which is the determinative element.

A case which contains many similarities to the instant proceeding is *In re Funding Systems Asset Management Corp.*, 111 B.R. 500 (Bankr.W.D.Pa.1990). In *Funding Systems*, the debtor equipment lessor sought, under 11 U.S.C. § 544(a)(1), to avoid security interests it had granted to Chemical in several computer leases because Chemical had failed to perfect its security interests as of the petition date. *Id.* at 502. The adversary proceeding was commenced before confirmation of Funding Systems' plan, but it was decided after confirmation. The court found Chemical had failed to perfect its security interest in most of the leases prepetition. Therefore, the court held, *inter alia*, that Chemical became an unsecured creditor as to those leases on the petition date because of its failure to perfect; its rights in the leases became subordinate to those of Funding Systems; and its security interests could be avoided under Section 544(a)(1). *Id.* at 522.

Chemical maintained, nevertheless, that lien avoidance should not be permitted where it benefited only the debtor and was not necessary for the debtor to meet its obligations to other creditors. *Id.* at 523. The court in *Funding Systems* rejected Chemical's contention. *Id.* Its explanation is applicable in the instant situation.

> This is not the appropriate standard for determining whether recovery by

Debtor in this instance would benefit its unsecured creditors. The *necessity* of such recovery in order for Debtor to be able to meet its obligation to unsecured creditors is not relevant. What matters is whether unsecured creditors will receive "... some benefit from the recovery of the preferences, even if it is not an increase in the amount the creditors will receive." *In re Centennial Industries, Inc.*, 12 B.R. 99, 102 (Bankr.S.D.N.Y. 1981). All that is required is that recovery by Debtor will increase its assets and improve its financial health to the extent that the likelihood is improved of its being able to satisfy its obligations to its creditors under the Plan. *In re Tennesse Wheel & Rubber Co.*, 64 B.R. 721, 724 (Bankr.M.D.Tenn.1986), *aff'd mem.*, 75 B.R. 1 (M.D.Tenn.1987), *citing, In re Southern Indus. Banking Corp.*, 59 B.R. 638 (Bankr.E.D.Tenn.1986).

*Id.*

The equitable principles applied in the *Vintero* case were followed in *In re Chapman*, 51 B.R. 663 (Bankr.D.C.1985) where a Chapter 13 debtor was not allowed to apply the strong arm clause of 11 U.S.C. § 544(a)(3) to avoid a third trust lien on the debtor's residence. The debtor's plan proposed to pay the only unsecured creditor just $1.00; but because the unsecured creditor had not filed a claim before the bar date, it in fact would receive nothing. *Id.* at 665. Since debtor's plan provided only *de minimis* benefit, if any, to only one general creditor, and since avoidance of the lien would benefit only the debtor, the court found Section 544(a)(3) should not be applied to invalidate the third trust. *Id.* at 666. Further, in *Chapman*, and as the court stated in *Vintero*, 735 F.2d at 742, no creditor would be adversely affected by enforcement of the unperfected lien against the debtor. *Chapman*, 51 B.R. at 666. Another situation where *Vintero's* equitable principles might be applicable suggested in *In re Howard's Appliance Corp.*, 874 F.2d 88, 95 (2nd Cir.1989) is where the debtor is estopped by its own misconduct from seeking lien avoidance for its own benefit.

None of these considerations for not applying the strong arm clause of 11 U.S.C. § 544(a)(1) are applicable in the instant proceeding. Rather, permitting debtor to exercise its avoidance powers will promote the success of the reorganization plan.

### D.

■ Raymond argues finally that a reservation of title under a lease is a security interest. Maryland Commercial Law Code Ann. § 1–201(37) (Supp.1990) defines the term "security interest" in part as:

> [A]n agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The argument that the lease created a security interest does not bolster Raymond's position. What the cases cited by Raymond do not contradict is that where a lease is intended as a security agreement, a financing statement still must be filed in order to perfect the creditor's security interest. Md.Com.Law Code Ann. § 9–402. Consequently, the question still remains whether Raymond's security interest was perfected, and for the reasons previously set forth, the court finds it was not.

### III.

*Summary*

In summary, Raymond's security interest in the equipment under lease to Greenbelt Cooperative, Inc. is valid against that company, but it was not perfected under Maryland law against third party creditors. Therefore, it may be avoided by Debtor, in its capacity as debtor-in-possession, under 11 U.S.C. § 544(a)(1). Since avoidance of Raymond's security interest will enhance the likelihood of Debtor's successful reorganization, avoidance does not constitute a windfall to Debtor without benefit to creditors, and equitable principles do not bar avoidance. As the assets in which Raymond had an unperfected security interest were sold and the proceeds put in escrow,

the proceeds of the escrow account should be distributed to Debtor.

Counsel for Debtor is requested to submit a form of order to implement this decision.